[Crim. Nos. 24534, 25504. Second Dist., Div. Four. July 31, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
STEWART MORTIMER SOBEL, Defendant and Appellant.

## COUNSEL

Cy H. Lemaire, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON, Acting P. J.**—Defendant Stewart Mortimer Sobel was charged by information in one count with violating Government Code section 1090 and section 1097, provisions prohibiting conflict of interest by public officials and employees.[1] It was charged that defendant, "being at all times, during the period alleged, a County employee, to wit, a deputy purchasing agent, on or about and between July 13, 1970 and April 18, 1972 at and in the County of Los Angeles, State of California, did wilfully, unlawfully and feloniously have a financial interest in contracts made by the said [defendant] in the official capacity of the said [defendant] and became a vendor at purchases made by the said [defendant] in his official capacity."

Defendant pleaded not guilty. Trial by jury was waived. Pursuant to stipulation, the case was submitted on the testimony contained in the preliminary hearing transcript, each side reserving the right to offer additional evidence. Such evidence was received, and defendant was found guilty as charged. His motion for a new trial was denied. The trial court suspended criminal proceedings and granted defendant probation for a period of three years, on condition that he pay a fine of $1,000. Defendant appeals the judgment (order granting probation) which we affirm.

Waldo A. Perez, Head Deputy Purchasing Agent for the Los Angeles County Department of Purchasing and Stores, testified that defendant was assigned to the department on January 30, 1969, as a trainee. His duty was to assist more experienced personnel in performing the departmental function, that of negotiating on behalf of Los Angeles County the purchase of all necessary supplies at the lowest possible price. Shortly after defendant

---

[1]Section 1090: "Members of the Legislature, state, county, district, judicial district and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity.

"As used in this article, 'district' means any agency of the state formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries."

Section 1097: "Every officer or person prohibited by the laws of this State from making or being interested in contracts, or from becoming a vendor or purchaser at sales, or from purchasing scrip, or other evidences of indebtedness, including any member of the governing board of a school district, who wilfully violates any of the provisions of such laws, is punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in the state prison for not more than five years, and is forever disqualified from holding any office in this State."

commenced this assignment, the department underwent reorganization in an attempt to streamline the purchasing operation and cope more effectively with the ever-increasing volume of purchasing required. One aspect of the new plan was the delineation of particular areas of purchasing by subject matter, and the assignment of particular personnel exclusively to those areas with the hope that the concentrated, specialized experience gained thereby would produce a better long range competitive bidding situation for Los Angeles County.

In August or September 1969, Perez testified defendant was assigned to the book buying section as a purchasing agent, and he remained there until his departure from county employment in April 1972.

Perez provided the trial court with a general description of how books are purchased. Large volume purchases are made subject to a formal bid procedure. Solicitation for bids is made to a compiled list of vendors by the purchasing agent, as the person responsible for actual negotiation. An important responsibility of the agent is to maintain and expand the vendor list to include as many sources as possible, in order to encourage competitive bidding. Sealed bids are received from the vendors, and the low bid is ascertained. This step is also within the province of the purchasing agent. While it is standard operating procedure to accept the low bid, it is possible for the agent to substitute another vendor if he decides the circumstances warrant it. In addition to formal bids, other methods are used. Sometimes it is deemed more expedient to solicit bids from only two or three vendors who are known to have available the particular merchandise needed. Small or unusual purchases are often made by contacting a particular vendor by telephone. All of the resulting purchase orders, which are submitted to supervisory personnel by the agent for final approval, unless he has authority to act without such approval, show the method used by the agent to obtain the quoted price, i.e., by telephone or letter, and such orders are further identified by a numbered sequence which shows whether formal or informal bid procedure has been used.

Perez explained that the purchasing agent has considerable discretion in selecting vendors and in arranging financial terms. Standard operating procedure in the department, however, requires that deviations from ordinary practice, such as the selection of other than the low bid or acceptance of a discount arrangement, are expected to be submitted for approval by the agent to his supervisor but, again, in practice such submission results from the exercise of discretion by the agent. When an agent completes a transaction, it may be submitted as a purchase order for approval by a supervisor; however, the review of the transaction, particularly when negotiated

by an experienced buyer, is largely perfunctory. Because of the tremendous volume of business done by the department every year, it is virtually impossible to employ supervisory staff to scrutinize every individual transaction as it occurs. In short, it is necessary for the department to rely on individual agents' skill, honesty and loyalty.

Perez testified that defendant performed the functions of an agent described above from the time he was assigned to the book buying section, at first under supervision and later with increasing autonomy. Defendant expanded the vendor list used in his section considerably. He and another employee devised a prepayment plan, whereby the vendor was to be paid at the time the order was placed and in return for advance payment the county was to be given a 2 percent discount on the order. The intended objective was to obtain a price advantage for the county but, as will·be seen, the prepayment plan was also of direct benefit to one particular vendor, the Eola Book Service, Inc.

The prosecution introduced into evidence numerous purchase orders, negotiated by defendant as a purchasing agent, with the Eola Book Service, Inc. from July 1970 to December 1971. Some had been approved by a superior, and some had not. Gerald Costa, head of management service for the purchasing department, testified that he had found nothing in his fiscal records showing that Eola had done business with Los Angeles County in 1969, but that Eola had done a dollar volume of business with the county totalling $269,977 in 1970-1971, and had increased the volume to $361,249 in 1971-1972. Perez testified that Eola's substantial volume of business was unusual for a concern that did not have a long history of transacting with the county. He also testified that Eola was the only vendor who had received prepayment in return for giving the 2 percent discount, the procedure formulated by the defendant. In addition, subsequent audit on some of the formal bidding contracts defendant had negotiated with Eola established that Eola had been awarded the contract when another vendor has actually turned in a lower bid.

The People introduced into evidence two signature authorization cards for bank accounts established by Eola, one in Nevada and another in California. The cards showed that the persons authorized to draw on the accounts were Lois Eola, who subsequently married defendant, and a certain "M. Stewart." Other evidence established that county warrants for payment of book purchases were deposited by Eola in the California account; certain checks were introduced showing payment to defendant from that account either by Lois Eola or "M. Stewart." One such check was used by defendant to pay off a balance owed to his stock broker.

Stock broker Chronis testified that while he was employed by a brokerage firm in 1971, defendant had dealt with him, opening a joint account in his own name with Eola Book Service, Inc.

Laurence W. Sloan, a handwriting expert in the office of the district attorney, gave his expert opinion that defendant's signature and that of "M. Stewart" were written by the same person.

Defendant denied that he had signed the bank account authorization cards, but did say that he had used the name "M. Stewart" "in '48 and '49 when I was writing." It is not clear from the record when defendant first became friendly with Lois Eola. Defendant testified, however, that during his years of employment as a purchasing agent, he had spent substantial periods of time with Lois in Las Vegas and admitted that he had accompanied her on one occasion when she consulted an attorney about incorporating the book business. She also consulted with defendant about stock market investments.

In April 1972 defendant informed his department head of his impending marriage to Lois Eola, a vendor doing business with the department. The investigation which led to this prosecution commenced.

In connection with this appeal, defendant requested this court to take judicial notice of the Administrative Code of Los Angeles County (Ordinance 4099), material relating to the classification of employees by the county civil service commission, and of a handbook of the Los Angeles County Department of Purchasing and Stores. The handbook sets forth policies and procedures of the department, designating which personnel have authority to execute contracts on behalf of Los Angeles County.

On February 27, 1974, we made an order deferring the decision to take judicial notice of the material submitted by defendant, but we did allow counsel to refer to the material in their appellate briefs, to explain its relevance to this appeal and the basis upon which judicial notice should be taken.

Defendant contends that Government Code section 1090, if correctly interpreted, is not applicable to him, and thus he was improperly convicted of violating the statute. He claims that at all times during the period he negotiated with Eola he was performing ministerial functions under supervision. He further contends that during his employment he was classified, first, as an assistant deputy purchasing agent and then as a deputy purchasing agent with probationary status, and that in these classifications he was without legal authority to execute contracts with vendors

on behalf of Los Angeles County. He argues that section 1090, which prohibits an interest by an official or employee in "any contract *made* by them in their *official capacity* . . ." (italics added) only applies to those persons who actually have the legal authority to execute contracts, and do so, for the governmental entity they represent, and that he was not a member of that group.

Defendant misconceives the meaning and purpose of the conflict of interest statute. In *People* v. *Darby,* 114 Cal.App.2d 412, 425 [250 P.2d 743], it was said that the statute is based upon "the ancient truism that one cannot faithfully serve two masters at one and the same time . . . *the act denounced* is the 'possession of an interest' " adverse to the governmental body for whom the actor performs. (Italics added.)

Actual execution of a contract is not the only criteria for application of the statute. "The instant statutes [§ 1090 included] are concerned with any interest, . . . which would prevent the officials involved from exercising absolute loyalty and undivided allegiance to the best interests of the city. [Citations.] . . . [T]he object . . . is to remove or limit the *possibility* of any personal influence, either directly or indirectly which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct. [Citations.] . . . [W]e are persuaded, if not compelled, to reject . . . the narrow and technical interpretation of the word 'made' and construe its statutory meaning to encompass the planning, preliminary discussions, compromises, drawing of plans and specifications and solicitation of bids . . . which here were, in the broad sense, embodied in the making of the contract." (*Stigall* v. *City of Taft,* 58 Cal.2d 565, 569-571 [25 Cal.Rptr. 441, 375 P.2d 289]; see also *Millbrae Assn. for Residential Survival* v. *City of Millbrae,* 262 Cal.App.2d 222, 237 [69 Cal.Rptr. 251].)

The decisional law, therefore, has not interpreted section 1090 in a hypertechnical manner, but holds that an official (or a public employee) may be convicted of violation no matter whether he actually participated personally in the execution of the questioned contract, if it is established that he had the opportunity to, and did, influence execution directly or indirectly to promote his personal interests. (See *People* v. *Watson,* 15 Cal. App.3d 28 [92 Cal.Rptr. 860].) By amendment to Government Code section 1090 in 1963, the Legislature recognized that it was necessary to include "employees" within the statute because, under present governmental conditions, many public employees do have the opportunity to exercise the prohibited influence. The existence of such opportunity for any particular employee is a factual issue to be resolved on a case by case basis.

In the instant case, the evidence was ample to support the conclusion that the defendant had the opportunity, whatever his job classification, to direct a steady flow of Los Angeles County business and money to a concern in which he was interested, personally, and that he did so. His activities in this regard constituted the type of conduct the Legislature desired to discourage.

■ In view of our discussion of section 1090, it is unnecessary for us to take judicial notice of the submitted material on this appeal, for it would not, even if supportive of defendant's position, affect the result herein. It is also unnecessary to do more than comment briefly and negatively on defendant's other contentions, i.e., that the prosecution "suppressed evidence" (the documentary items sought to be judicially noticed on this appeal) and that defendant was deprived of a fair trial by the ineffective assistance of his trial counsel. Since we have determined as a matter of law that defendant's actual civil service classification during the period from 1969 to 1972 was immaterial under the circumstances presented here, it follows that failure to present evidence of that status was not suppression by the People, nor was failure of counsel to emphasize with more vigor the alleged lack of contractual capacity a sign of incompetence.

By a petition for habeas corpus, which was argued and submitted concurrently with the appeal, defendant, in addition to re-arguing the issues on appeal which we have discussed above, contends that he was deprived of a fair trial by the failure of either the People or the defense counsel to introduce the administrative regulations above considered. Since we hold that those regulations, and the departmental action thereunder, did not remove defendant from the proscription of section 1090, it follows that there was no unfairness in the trial nor inadequacy of counsel.

The judgment is affirmed; the petition for a writ of habeas corpus is denied.

Kingsley, J., and Dunn, J., concurred.

A petition for a rehearing was denied August 20, 1974, and appellant's petition for a hearing by the Supreme Court was denied October 10, 1974.