[Nos. A088188, A089476. First Dist., Div. Two. July 11, 2001.]

BARBARA A. FINNEGAN, Plaintiff and Appellant, v.
CARL F. SCHRADER, Defendant and Appellant;
WEST BAY SANITARY DISTRICT, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to rule 976(b) of the California Rules of Court, this opinion is certified for partial publication. The Introduction, Factual and Procedural Background, part 1 of the Discussion and the Disposition are ordered published.

574

COUNSEL

Law Offices of Tony J. Tanke and Tony Jerome Tanke for Plaintiff and Appellant.

McCracken & Byers, McCracken Byers & Haesloop, Michael Dale McCracken, Daniel A. Crawford; Ropers, Majeski, Kohn & Bentley and Susan Heikkinen Handelman and Terry Anastassiou for Defendant and Appellant.

Atchison, Barisone & Condotti and Anthony Patrick Condotti for Defendant and Respondent.

## OPINION

**KLINE, P. J.—**

### Introduction

These consolidated appeals arise from a taxpayer's suit challenging the appointment of defendant Carl F. Schrader as district manager of the West Bay Sanitary District (WBSD or District). The suit alleged that Schrader's appointment violated state conflict of interest law because Schrader was a member of the District's Board of Directors at the time of his appointment. After a bench trial, the trial court entered judgment declaring Schrader's employment contract void and compelling Schrader to restore all compensation he had received under it. By posttrial order, the trial court also awarded plaintiff attorney fees against Schrader under Code of Civil Procedure section 1021.5. Schrader appeals from the judgment and cross-appeals from the award of fees. Barbara A. Finnegan, successor to the original plaintiff, appeals from the order awarding attorney fees, contesting both the sufficiency of the amount awarded and the trial court's refusal to make the District jointly and severally liable for the fee award along with Schrader.

We affirm the judgment and reverse the order awarding fees. We remand the case to the trial court to redetermine the apportionment and amount of the award.

### Factual and Procedural Background

WBSD is a local sanitary district organized under state law. The District maintains sewer lines for all or portions of the Cities of Menlo Park, Portola Valley, Atherton, East Palo Alto, Redwood City and Woodside as well as for

certain unincorporated areas of San Mateo and Santa Clara Counties, serving approximately 55,000 residents in total. WBSD is governed by a five-member, publicly elected, board of directors (Board).

Schrader served as a director of the District from 1983 until January 1991 and from March 1991 to September 1997. In January 1991, Schrader resigned from the Board in order to be considered for the position of WBSD district manager. The district manager position is WBSD's top employee position. After failing to obtain the position, Schrader was appointed by vote of the Board in March 1991 to fill the Board vacancy created by his January 1991 resignation.

In February 1997, the district manager of WBSD, Charles Thomas, resigned amidst accusations that he had taken kickbacks and embezzled funds from the District. Thomas was later convicted of embezzlement charges arising from his tenure at WBSD. Following Thomas's resignation, an interim district manager was appointed until a permanent district manager could be selected. At a regular Board meeting in May 1997, Schrader confirmed that he was interested in being considered for the permanent district manager position. At a June 1997 Board meeting, Schrader referred to himself as an "applicant" for the district manager's position and distributed a statement of his qualifications to the Board. At its regular meeting on July 28, 1997, the Board voted to limit the solicitation of candidates for the position to two: Schrader and the acting district manager, Timothy Clayton.

The Board convened a special meeting on September 2, 1997. After opening the meeting, the Board immediately adjourned to a closed session to consider the appointment to the position of district manager. Prior to commencement of the closed session, Schrader left the meeting because of his candidacy for the district manager position. Later, Schrader was invited to join the closed session so that he could be interviewed by the other Board members regarding his qualifications. Thereafter, the acting district manager, Clayton, joined the meeting when the Board returned to its open session. At that time, the Board announced that a motion had been made and seconded in closed session to offer the district manager position to Schrader on terms including a salary of $7,500 per month. Four Board members, Finn Halbo, John Inglis, David Knight and Donald Van Creveld, voted to offer the position to Schrader on these terms.[1] Schrader abstained.

---

[1]Directors Halbo, Inglis and Knight had also served with Schrader on the Board in 1991 when Schrader resigned and was reappointed after unsuccessfully applying for the district manager position.

In closed session following announcement of the vote, Schrader accepted the Board's offer of employment and agreed to become district manager effective September 3, 1997, upon his resignation from the Board. On September 3, 1997, Schrader began his employment as the District's manager. On September 8, 1997, Schrader submitted a handwritten note addressed to the Board stating that he was resigning from the Board effective September 3, 1997.

Shortly after Schrader's appointment as district manager, a candidate for board director, John Carcione, began publicly criticizing Schrader's appointment, which was reported in local press articles. Ronald Shepherd, a San Mateo County resident and WBSD ratepayer, began discussing the issue with Carcione after Carcione was elected to the Board in November 1997.

On March 23 and March 30, 1998, Shepherd served demands on the Board asking it to declare Schrader's employment contract void and to institute action to recover all money and benefits paid to him under the contract. On April 15, 1998, Shepherd filed the complaint that initiated this action. Schrader was named as a defendant, and the District was named as the real party in interest and as a defendant. The complaint alleged that Schrader's employment contract was void on conflict of interest grounds because it was negotiated and entered into while Schrader was still a member of the Board. The complaint sought declaratory relief that the contract was void and restitution of all salary and benefits paid to Schrader under the contract. The complaint also sought injunctive relief to prevent the District from paying any further compensation to Schrader and to disqualify Schrader from applying for the district manager position in the future.

On April 19, 1998, the Board held a special meeting at which a majority of the directors voted to release Schrader from his employment as district manager and to rehire him as acting district manager on the same terms and conditions, including salary, as his previous employment as district manager. On May 22, 1998, the District moved to strike prayers for relief in Shepherd's complaint seeking to enjoin the District from continuing to employ or compensate Schrader. In connection with the motion, the District asked the court to take judicial notice of the fact that Schrader had been terminated and reappointed on April 19, 1998. The District asserted, in part, that since Schrader was no longer a Board member when the Board created a new employment relationship with him effective April 20, 1998, his continued employment and compensation by the Board from that time forward could not violate the law. The District raised other issues concerning the injunctive relief sought by Shepherd. Schrader joined in the motion to strike and in the District's arguments on these points. Without stating its reasons, the trial court granted the District's motion to strike.

This case was tried to the court below on March 5, 1999. Trial was limited to the issue of Schrader's obligation to disgorge the compensation he received between September 3, 1997, and April 19, 1998. On April 6, 1999, the trial court issued a memorandum decision finding Schrader liable to the District for all compensation earned as district manager from September 3, 1997, through April 19, 1998. Judgment against Schrader and in favor of WBSD in the amount of $70,812 was entered on June 28, 1999. Over Shepherd's objection, the judgment also stated that "Defendant WBSD is entitled to judgment on plaintiff's complaint, and plaintiff shall take nothing from WBSD by virtue of his complaint." Schrader filed a timely notice of appeal from the judgment on August 18, 1999 (A088188).

Following entry of judgment, Shepherd brought a motion for attorney fees under Code of Civil Procedure section 1021.5 and motions to permit Shepherd to pursue enforcement of the District's judgment against Schrader and for an order denying Schrader indemnity from the District. In his fee motion, Shepherd sought an award of $149,428 in fees and costs. On December 6, 1999, the trial court entered an order granting the motion for attorney fees in part and denying it in part. The court set the recoverable amount of fees and costs at $88,318.65. On that same date, the trial court entered an order denying Shepherd's motions to enforce the judgment and to deny indemnity. Shepherd timely appealed from these orders on December 17, 1999 (A089476).

Both parties also filed cross-appeals. On Schrader's appeal from the judgment, Shepherd cross-appealed (1) to reverse the trial court's ruling striking allegations pertaining to Schrader's continued employment after April 19, 1998,[2] and (2) to delete that portion of the judgment stating that the District was entitled to judgment against plaintiff. On Shepherd's appeal from the trial court's postjudgment orders, Schrader cross-appealed to reverse the order awarding attorney fees. The two appeals and related cross-appeals were ordered consolidated.

After being himself elected as a Director of WBSD in November 1999, Shepherd moved for leave to substitute Barbara Finnegan as plaintiff, respondent and cross-appellant in these appeals. This court granted Shepherd's motion.[3]

---

[2]The issue of Schrader's liability to restore compensation received from the District after April 19, 1998, is also the subject of a pending action in San Mateo Superior Court (*West Bay Sanitary District* v. *Shepherd* (Super. Ct. San Mateo County No. 408435)). We have taken judicial notice of the pleadings in that action.

[3]Finnegan and her predecessor shall be referred to hereinafter as Finnegan or plaintiff.

## Discussion

### 1. Violation of Government Code Section 1090

The trial court found that Schrader violated Government Code section 1090[4] by accepting a position as district manager of WBSD before resigning his position as a member of the Board. Section 1090 states in pertinent part: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

It is undisputed here that WBSD and all members of its Board come within the purview of section 1090. It is also undisputed that Schrader did not resign from the Board until after the Board voted to offer him a position as district manager, at a salary of $7,500 per month, and he had accepted the position.[5]

Schrader advances three arguments why the monetary judgment against him must nonetheless be reversed as a matter of law: (1) section 1090 has no application to employment contracts; (2) the "rule of necessity" exception allowed Schrader to remain on the Board while his employment as district manager was under consideration despite any conflict of interest; and (3) Labor Code section 221 bars the recovery of wages from employees once they have rendered their services. ■ Because these are issues of statutory interpretation as applied to undisputed facts, our review is de novo. (*Engs Motor Truck Co. v. State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1464 [235 Cal.Rptr. 117].)

### Application of Section 1090 to Employment Contracts

■ Section 1090 is "concerned with *any* interest, other than perhaps a remote or minimal interest, which would prevent [public] officials from exercising absolute loyalty and undivided allegiance" to the public entity they serve. (*Stigall v. City of Taft, supra,* 58 Cal.2d 565, 569, italics added.) Its object is to "remove or limit the *possibility* of any personal influence, either directly or indirectly, which might bear on an official's decision as well as to void contracts which are actually obtained through fraud or

---

[4]Referred to hereinafter as section 1090.

[5]The trial court found it unnecessary, as we do, to consider whether section 1090 required Schrader to resign from the Board as soon as he expressed willingness to be considered for the district manager position. (See *Stigall v. City of Taft* (1962) 58 Cal.2d 565, 571 [25 Cal.Rptr. 441, 375 P.2d 289] [making of contract under § 1090 encompasses all preliminary discussions as well as final action forming a binding contract].)

dishonest conduct." (*Ibid.*) Thus, section 1090 is "aimed at eliminating temptation, avoiding the appearance of impropriety, and assuring the government of the officer's undivided and uncompromised allegiance." (*People v. Honig* (1996) 48 Cal.App.4th 289, 314 [55 Cal.Rptr.2d 555].)

By its terms, section 1090 applies to "any contract," with no express exclusion for employment contracts. In fact, language in a companion section, Government Code section 1091.5, is inconsistent with implying any such exclusion. Section 1091.5 defines certain types of interests that are deemed to be too remote to be disqualifying under section 1090. Section 1091.5, subdivision (a)(6) provides in relevant part that an officer or employee of a public agency is not deemed to have a financial interest in a contract if his or her interest is simply "[t]hat of a spouse of an . . . employee . . . in his or her spouse's *employment* . . . if his or her spouse's *employment* . . . has existed for at least one year prior to his or her election or appointment." (Italics added.) This language cannot be reconciled with the claim that employment contracts cannot create a conflict of interest for purposes of section 1090.

The two cases Schrader relies on do not support his position. In *Eldridge v. Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311 [273 Cal.Rptr. 654] (*Eldridge*), a hospital district employee who was elected to a position on the district board sued after the district passed a bylaw compelling district employees to resign their employment before assuming office as district directors. The district argued that section 1090 required it to act to prevent an employee from simultaneously serving as a board member. The Fifth District Court of Appeal disagreed, holding that the challenged bylaw violated Government Code section 3203, which prohibits local agencies from placing restrictions on the political activities of their employees. *Eldridge* made it clear that offering an employment contract to an existing board member would present an entirely different situation, stating that "[b]ecause appellant had an existing contract of employment at the time she was elected, she was not required by the operation of section 1090 to resign either her job or a position on the board." (*Eldridge*, at p. 321.) Far from assisting Schrader, *Eldridge* directly undermines his argument that section 1090 does not apply to employment contracts.

*Raymond v. Bartlett* (1946) 77 Cal.App.2d 283 [175 P.2d 288] (*Raymond*) is similarly unavailing for Schrader. In that case the city's longtime elected clerk was hired by the city council as the city's purchasing agent. The clerk was not a member of the city council when the employment contract was made so there was no risk of undue influence and no violation of the terms

of section 1090. (*Raymond*, at pp. 384-385.) *Raymond* in no way supports an argument that public boards are free under section 1090 to enter into employment contracts with their individual board members. Neither *Eldridge* nor *Raymond* holds or implies that the board of a public agency could hire one of its own members as an employee without violating section 1090.[6]

Accordingly, we reject Schrader's argument that section 1090 is inapplicable in the employment context.

*Rule of Necessity*

Schrader next argues that any potential conflict in this case was obviated by the "rule of necessity." Developed originally at common law, the "rule of necessity" allows public officials to take actions they would otherwise be disqualified from taking by operation of conflict of interest rules if their disqualification would make it impossible for the public agency to fulfill one of its vital public duties. (*Kunec v. Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 520 [64 Cal.Rptr.2d 143].) Thus, the rule of necessity was applied in *Gonsalves v. City of Dairy Valley* (1968) 265 Cal.App.2d 400 [71 Cal.Rptr. 255] to uphold the city council's decision granting a zoning permit to a local dairy cooperative in which all of the council members held shares.

In *Kunec v. Brea Redevelopment Agency, supra,* 55 Cal.App.4th at page 516, a property owner sought to block condemnation proceedings brought by a city redevelopment agency as part of a downtown revitalization project. The agency was governed by a five-member board. Two of the members had a conflict of interest in voting on the issue, which, by law, required a two-thirds vote of the board. Applying a statutory version of the rule of necessity enacted as part of the Political Reform Act of 1974, Government Code section 87101, the court found that the rule would have permitted the agency to vote on the condemnation measure had the agency followed proper statutory procedures for invoking it.[7] (*Kunec*, at pp. 521-523.)

Under section 1090, the mere presence of one member on a board with a financial interest in a transaction is sufficient to invalidate the transaction

---

[6]The Attorney General, who is principally charged with enforcing section 1090, has squarely opined that section 1090 bars public boards from offering employment positions to their members: "[P]ublic employment constitutes a 'contract' within the meaning of . . . section 1090. [Citations.] Accordingly, a legislative body or other board or commission could not appoint one of its own members to an employment position within the agency; the board member would have a proscribed financial interest in receiving a salary as an employee." (81 Ops.Cal.Atty.Gen. 274, 278 (1998).)

[7]The Political Reform Act is found at Government Code section 87100 et seq. Section 87101 states in relevant part, "Section 87100 [barring officials from participating in decisions in which he or she has a financial interest] does not prevent any public official from making or participating in the making of a governmental decision to the extent his participation is

even if the member has not voted on the matter or participated in the discussions leading up to the vote. (*Thomson v. Call* (1985) 38 Cal.3d 633, 649-650 [214 Cal.Rptr. 139, 699 P.2d 316].) Thus, when it applies, section 1090 effectively disqualifies the entire board from acting. If the board has a legal duty to enter into a particular contract in which one of its members has a financial interest, the rule of necessity may come into play. This issue has been addressed in the employment context in a series of Attorney General's opinions. (See 73 Ops.Cal.Atty.Gen. 191 (1990); 69 Ops.Cal.Atty.Gen. 255 (1986); 69 Ops.Cal.Atty.Gen. 102 (1986); 65 Ops.Cal.Atty.Gen. 305 (1982).)

For example, in 73 Ops.Cal.Atty.Gen. 191, *supra*, the Attorney General found that a teacher could serve as a member of the school board as long as the board made no change in her employment relationship with the district by promotion or otherwise during her term of office. The rule of necessity was found to apply because the school board would otherwise be disabled by section 1090 from annually contracting for teacher services or from fulfilling other collective bargaining obligations, in derogation of its legal duties. (73 Ops.Cal.Atty.Gen., *supra*, at p. 195; see also 65 Ops.Cal.Atty.Gen., *supra*, at pp. 305, 310.) However, the opinion held that the rule of necessity would not validate any change in the terms of the school board member's employment relationship with the district, such as a promotion or other change of position, because the board was under no legal duty to make such a change. (73 Ops.Cal.Atty.Gen., *supra*, at p. 195.) The Attorney General also observed that section 1090 "clearly" prohibited a school board member from being hired as a teacher in the same school district. (73 Ops.Cal.Atty.Gen., *supra*, at p. 194; see also 68 Ops.Cal.Atty.Gen. 337 (1985) [§ 10904 bars district board from hiring board member as part-time employee, but existing employee could join the board so long as there were no modifications to his contract during his term of office].) The analysis adopted by the Attorney General in this series of opinions was followed in *Eldridge, supra,* 224 Cal.App.3d at page 323, where the court found that the rule of necessity would permit a nurse elected to the governing board of a hospital district to retain both positions, as long as the terms of her employment relationship were not modified while she held the office of board director.

According to Schrader, the rule of necessity applies here because, like the school board in 73 Ops.Cal.Atty.Gen. 191, *supra*, the Board was under a legal duty to contract for the performance of vital functions, such as those performed by the district manager. This argument misses the mark. By hiring Schrader, the Board created an entirely new and individualized employment

legally required for the action or decision to be made." The parties to this appeal do not contend that section 87100 is controlling here.

contract with him while he continued to serve as a Board member. The Board was not merely renewing a preexisting contract, nor was the act of hiring Schrader necessary in order to fulfill a recurring legal obligation to a class of essential employees. Assuming for the sake of argument that WBSD had a legal duty to hire a permanent district manager, it certainly had no duty to enter into a contract with Schrader.

Schrader cites no case or authority applying the rule of necessity to validate a contract created under circumstances resembling those present here. In fact, adopting Schrader's view of the necessity exception would eviscerate section 1090. Public agencies generally enter into contracts in furtherance of their legal duties. If that were sufficient to trigger the rule of necessity, no board member's financial interest in such a contract would ever be subject to section 1090. Accordingly, we reject Schrader's defense based on the rule of necessity.

*Disgorgement of Wages and Benefits*

Finally, Schrader argues that the remedy of requiring him to restore to his employer all wages and benefits earned from September 3, 1997, through April 19, 1998, was barred by Labor Code section 221.[8]

It is settled law that where a contract is made in violation of section 1090, the public entity involved is entitled to recover any compensation that it has paid under the contract without restoring any of the benefits it has received. (*Thomson v. Call, supra,* 38 Cal.3d at pp. 646-647; see also Gov. Code, § 1092.) The contract is against the express prohibition of the law, and " '. . . courts will not entertain any rights growing out of such a contract, or permit a recovery upon quantum meruit or quantum valebat.' " (*Thomson v. Call, supra,* 38 Cal.3d at p. 647, quoting *County of Shasta v. Moody* (1928) 90 Cal.App. 519, 523-524 [265 P. 1032], italics omitted.) This principle applies without regard to the willfulness of the violation. "A person who violates section 1090, regardless of whether the violation is intentional, forfeits any rights or interests flowing from the illegal contract." (*Campagna v. City of Sanger* (1996) 42 Cal.App.4th 533, 538 [49 Cal.Rptr.2d 676].)

In *Thomson v. Call, supra,* 38 Cal.3d 633, 637-638, 640, the city acquired a valuable parcel of land sold to it indirectly by a city council member in a complex transaction that had been cleared with the city attorney. After the sale was found to have violated section 1090, the city was allowed to retain the land and was awarded a money judgment against the council member for

---

[8]Labor Code section 221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

the full sale price of the land with interest, with no deduction even for the original price his family had paid for the land in 1970. (*Thomson*, at p. 652.) The Supreme Court observed that although the remedy was harsh, it was consistent with the policy of strictly enforcing conflict of interest statutes and provided a bright-line remedy and a strong disincentive for officeholders tempted to misuse their offices. (*Ibid.*)

Schrader cites no authority for the proposition that Labor Code section 221 trumps the strong public policy requiring forfeiture of contract rights under section 1090. Section 221 was enacted in order to prevent employers from utilizing secret deductions or kickbacks to pay employees less than their stated wages. (*Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 328 [19 Cal.Rptr. 492, 369 P.2d 20].) Labor Code section 224 provides in relevant part that section 221 "in no way make[s] it unlawful for an employer to withhold or divert any portion of an employee's wages when the employer is required or empowered so to do by state or federal law."

Various provisions of the Labor Code do evince a strong public policy of ensuring employees are paid fully and promptly for their efforts. (See *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 574 [74 Cal.Rptr.2d 29].) We do not believe that these provisions were intended to ratify illegal employment contracts or to immunize a public official from liability for a conflict of interest. The disgorgement remedy adopted by the trial court was appropriate.

For the reasons stated, we affirm the trial court judgment finding Schrader liable for disgorgement of his salary and benefits received as district manager prior to April 20, 1998.[9]

2.   *Attorneys' Fee Award**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### Disposition

The judgment appealed from in case No. A088188 is affirmed. The order granting attorney fees appealed from in case No. A089476 is reversed, and

---

[9]Finnegan has cross-appealed from a prejudgment order striking certain allegations of the complaint pertaining to Schrader's continued employment as district manager after April 19, 1998, contending that his purported termination and reappointment on that date did not cure the section 1090 violation. We have taken judicial notice of the pleadings in a related action still pending in San Mateo County, *West Bay Sanitary District* v. *Shepherd, supra*, No. 408435 in which that issue is squarely presented. Because the basis for the order striking pleadings is unclear, we decline to reach the merits of Finnegan's claims regarding the period after April 19, 1998, until those claims have been more fully litigated in the second action.

*See footnote, *ante*, page 572.

the case is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs on both appeals are awarded to appellant Finnegan. We further grant appellant Finnegan's request for attorney fees on appeal, the amount to be decided by the trial court.

Lambden, J., and Ruvolo, J., concurred.

On August 10, 2001, the opinion was modified to read as printed above.