BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE WESLEY CHESBRO, MEMBER OF THE STATE SENATE, has requested an opinion on the following questions:
1. May a member of the board of directors of a community services district remain on the board after filing a lawsuit against the district challenging the board's issuance of a development permit to the owner of property adjacent to the director's property?
2. Assuming that the director remains on the board, may the district and the director enter into an agreement settling the lawsuit?
 CONCLUSIONS
1. A member of the board of directors of a community services district may remain on the board after filing a lawsuit against the district challenging the board's issuance of a development permit to the owner of property adjacent to the director's property.
2. Assuming that the director remains on the board, the district and the director may not enter into an agreement settling the lawsuit.
 ANALYSIS
We are informed that a community services district manages groundwater resources and provides wastewater treatment within the district's boundaries. It is governed by a board of directors consisting of five elected directors. (See Gov. Code, § 61200.)[1] Under the district's ordinances, any proposal for new development requires a groundwater extraction permit. One of the neighbors of a district director was issued a permit, which the director opposed due to the possible adverse effect the development might have upon his well water. The director did not participate in the decision to grant the permit and has now filed a lawsuit against the district to overturn the board's decision.
We are asked two questions regarding the director's lawsuit against the district. First, must he resign from the board? And second, if he remains on the board, may the district and the director negotiate a settlement of the lawsuit? We conclude that he need not resign from the board but that any settlement agreement between the parties would violate California law.
1. Resignation From Office
In determining whether the director must resign from the board upon filing a lawsuit against the district, we look first to the Political Reform Act of 1974 (§§ 81000-91014; "Act"). The Act prohibits public officials from participating in government decisions in which they have a financial interest. (See § 87100; 78 Ops.Cal.Atty.Gen. 362, 368-374 (1995); 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen. 45, 46 (1987).)
When a disqualifying conflict of interest exists, as here (see Cal. Code Regs., tit. 2, § 2:18704.2, subd. (a)(1)), the Act requires that the disqualified official abstain from participating in every aspect of the decision-making process. He may not be counted for purposes of establishing a quorum. (Cal. Code Regs., tit. 2, § 2:18702.1, subd. (b).) He is also prohibited from attending any closed session affecting his interests, and he may not obtain any confidential information from the closed session. (Cal. Code Regs., tit. 2, § 2:18702.1, subds. (a)(5), (c); see Hamilton v. Town of Los Gatos (1989) 213 Cal.App.3d 1050,1058-1059; 61 Ops.Cal.Atty.Gen. 243, 250-255 (1978).) However, the disqualified official is not required to forfeit his public office; rather, the Act demands only that he play no part in the particular deliberations and decisions affecting his economic interests. (§87100.) Nothing in the Act prohibits him from filing a lawsuit against the public agency of which he is a board member or requires his resignation from office for having done so.
Our review of other relevant statutes leads us to the same conclusion. Under the Community Services District Law (§§ 61000-61850), a director is not prohibited from filing a lawsuit against the district, and nothing in this statutory scheme requires resignation from office for filing such a lawsuit. Similarly, we find no suggestion in Water Code sections 10700-10717, applicable to the district in question, requiring resignation from office in the circumstances presented. In sum, we know of no law that would require the director to resign from membership on the board for filing a lawsuit.
Of course, the director may not participate in any board discussions about the lawsuit, nor may he attempt to use his official status to influence the manner in which the board conducts its side of the litigation. The director's personal economic interests would be directly affected by the lawsuit, just as they were by the initial permit application, and he must therefore completely recuse himself from all board business relating thereto.
We thus conclude that a member of the board of directors of a community services district may remain on the board after filing a lawsuit against the district challenging the board's issuance of a development permit to the owner of property adjacent to the director's property.
2. Settlement Negotiations
Having concluded that the director with the disqualifying conflict of interest may remain on the board after filing the lawsuit, we consider whether the parties may negotiate a settlement agreement with respect to the litigation. Because settlement agreements are contractual in nature, any attempt by the board and the director to execute an agreement must be examined in light of the conflict-of-interest provisions of section1090, which states in relevant part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
Section 1090 prohibits public officers, acting in their official capacities, from making contracts in which they are financially interested. If, as here, the public officer is a board member, this prohibition extends to the board on which he serves. (See Thomson v. Call
(1985) 38 Cal.3d 633.)
The purpose of section 1090 "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct. . . ." (Stigall v. City of Taft, supra, 58 Cal.2d at p. 569.) The statute is intended "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (City of Imperial Beach v. Bailey (1980)103 Cal.App.3d 191, 197.)
Section 1090's prohibition applies even when the terms of the proposed contract are demonstrably fair and equitable, or are plainly to the local agency's advantage. (Thomson v. Call, supra, 38 Cal.3d at pp. 646-649.) Furthermore, unlike the Act's conflictof-interest rule, section1090 is not satisfied by the interested official's recusal from discussions, meetings, and votes pertaining to the contract. (Fraser-Yamor Agency, Inc. v. County of Del Norte (1977) 68 Cal.App.3d 201,211-212.)[2] Instead, no matter how carefully or completely a board member attempts to avoid participating in or influencing the execution of a contract, he is conclusively presumed to have "made" the contract for purposes of section 1090, and the contract is void. (Thomson v.Call, supra, 38 Cal.3d at pp. 645, 649; 76 Ops.Cal.Atty.Gen. 118, 119 (1993).)[3]
Here, the possible settlement of the director's lawsuit would present an unavoidable conflict, and the interested director would be presumed to be making the contract as part of the board as well as for himself. Absent some exception, then, section 1090 would prohibit entering into a settlement agreement. (Cf. Stigall v. City of Taft, supra,58 Cal.2d 565 [contract with plumbing business owned by city councilman]; City Council v. McKinley, supra, 80 Cal.App.3d 204 [contract with architectural firm of which board member was president and stockholder]; People v. Sobel, supra, 40 Cal.App.3d 1046 [contract with corporation in which city employee and spouse were primary shareholders]; Terry v. Bender (1956)143 Cal.App.2d 198 [contract between city and special counsel in which mayor had financial interest].)
We reject any suggestion that the execution of a settlement agreement might be permitted under the holding of Santa Clara Valley Water Dist.v. Gross (1988) 200 Cal.App.3d 1363. The narrow exception recognized inSanta Clara was based upon a special statute establishing a formal, court-supervised framework for exchanging final offers and demands in a condemnation action. The court-supervised procedure that was at issue inSanta Clara was specifically distinguished from ordinary settlement negotiations between parties for purposes of section 1090. (Id. at p. 1370.)[4]
The courts have recognized that section 1090's prohibition must be broadly construed and strictly enforced. (See, e.g., Stigall v. Cityof Taft, supra, 58 Cal.2d at pp. 569-571; Finnegan v. Schrader (2001)91 Cal.App.4th 572, 579-580; City Council v. McKinley, supra, 80 Cal.App.3d at p. 213.) Accordingly, assuming that the director remains on the board, we conclude that the district and the director may not enter into an agreement settling the lawsuit.
[1] All references hereafter to the Government Code are by section number only.
[2] In sections 1091 and 1091.5, the Legislature has deemed certain interests in contracts to be "remote interests" and "noninterests" that fall outside the strict prohibition of section1090. Recusal is required when the interest is remote but not if it is classified as a noninterest. (See, e.g., 85 Ops.Cal.Atty.Gen., supra, at pp. 36-38.) In the circumstances presented, these statutory exceptions are not germane to our discussion.
[3] We note that the phrase "any contract made by them" contained in section 1090 has been broadly defined to include various activities leading up to execution of the contract, including preliminary discussions, negotiations, compromises, reasoning, and planning. (SeeStigall v. City of Taft, supra, 58 Cal.2d at pp. 569-571; City Councilv. McKinley (1978) 80 Cal.App.3d 204, 212-213; People v. Sobel (1974)40 Cal.App.3d 1046, 1052; Millbrae Assn. for Residential Survival v. Cityof Millbrae (1968) 262 Cal.App.2d 222, 237; Schaefer v. Berinstein (1956)140 Cal.App.2d 278, 291-292; 85 Ops.Cal.Atty.Gen. 34 (2002); 80 Ops.Cal.Atty.Gen. 41, 42-44 (1997).)
[4] In 81 Ops.Cal.Atty.Gen 373, 377 (1998), we applied the Santa Clara
holding to a statutorily mandated reimbursement procedure in which the reimbursement amount was "dictated by the costs of construction" and was "not subject to negotiation so as to cause an appearance of impropriety" — facts which are absent here.