BILL LOCKYER Attorney General THOMAS S. LAZAR Deputy Attorney General
THE HONORABLE MARTHA M. ESCUTIA, MEMBER OF THE STATE SENATE, has requested an opinion on the following questions:
1. May the board of a redevelopment agency enter into an agreement with a business firm that purchases goods and services from a board member who has been a supplier of goods and services to the firm for at least five years prior to the commencement of his current term of office, but not for five years prior to the commencement of his initial term of office, if the board member does not participate in or influence the making of the agreement?
2. May the board of a redevelopment agency enter into an agreement with a business firm that purchases goods and services from a board member who has been a supplier of goods and services to the firm if the board member first terminates his business relationship with the firm?
CONCLUSIONS
1. The board of a redevelopment agency may enter into an agreement with a business firm that purchases goods and services from a board member who has been a supplier of goods and services to the firm for at least five years prior to the commencement of his current term of office, although not for five years prior to the commencement of his initial term of office, if the board member does not participate in or influence the making of the agreement.
2. The board of a redevelopment agency may enter into an agreement with a business firm that purchases goods and services from a board member who has been a supplier of goods and services to the firm if the board member first terminates his business relationship with the firm.
ANALYSIS
The Legislature has enacted a comprehensive statutory scheme, the Community Redevelopment Law (Health Saf. Code, §§ 33000-33855), "[t]o protect and promote the sound development and redevelopment of blighted areas and the general welfare of the inhabitants of the communities in which they exist by remedying such injurious conditions through the employment of all appropriate means." (Health Saf. Code, § 33037, subd. (a).) Under this legislation, "[t]here is in each community a public body, corporate and politic, known as the redevelopment agency of the community." (Health Saf. Code, § 33100.) A city council or a county board of supervisors may appoint the members of a redevelopment agency board or choose to act as the redevelopment agency board itself. (Health 
Saf. Code, §§ 33003, 33007,33100, 33101,33200.)
We are informed that the board of a redevelopment agency, which in this case is a city council, anticipates entering into agreements with business firms intending to locate or expand their offices in a redevelopment project area. One board member is the owner of a promotional products company whose customers include business firms with which the redevelopment agency board expects to execute agreements. The board member is in his third consecutive four-year term of office and has been a supplier of promotional products and services to these firms for at least five years prior to the commencement of his current term of office, but not for five years prior to his initial term of office.
The two questions presented for resolution concern the possible application of Government Code section 1090[1] with respect to the proposed agreements between the redevelopment agency board and the business firms that are current customers of the board member. Section 1090 provides in part:
"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
1. Commencement of the Five-Year Period
The first question presented focuses on the "remote interest" exception of section 1091, subdivision (b)(8), which allows a contract to be executed despite section 1090's prohibition when the conflict of interest is:
"That of a supplier of goods or services when those goods or services have been supplied to the contracting party by the officer for at least five years prior to his or her election or appointment of office."
Does the five-year period for this remote interest exception relate to the initial term of office or to the current term of office? We conclude that it relates to the current term.
Preliminarily, we note that a redevelopment agency board member, who is also a city council member, would come under the provisions of section1090 (see, e.g., Thomson v. Call (1985) 38 Cal.3d 633, 645; City Council v. McKinley (1978) 80 Cal.App.3d 204, 213; 85 Ops.Cal.Atty.Gen. 176 (2002); 82 Ops.Cal.Atty.Gen. 126 (1999); 61 Ops.Cal.Atty.Gen. 243, 248-250 (1978)), and the proposed redevelopment agreements between the agency board and the business firms would constitute "contracts" for purposes of the statute (see 82 Ops.Cal.Atty.Gen., supra, at p. 129, fn. 4; 78 Ops.Cal.Atty.Gen. 230, 231-235 (1995)). The board member would have a "financial interest" in the contracts due to his business relationship with the contracting parties as a supplier of goods or services. (See 85 Ops.Cal.Atty.Gen. 176, 177-179 (2002); 85 Ops.Cal.Atty.Gen. 34, 35-37 (2002).) In this regard, the board member could be influenced by the prospect of future business opportunities directly related to the contracts or by a desire to maintain favorable ongoing relationships with the contracting parties. The Legislature has made clear that ongoing business relationships may represent financial interests for purposes of section 1090. (See, e.g., § 1091, subd. (b)(5), (b)(6), (b)(8).) The purpose of section 1090 "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear upon an official's decision. . . ." (Stigall v. City of Taft (1962) 58 Cal.2d 656, 569; Finnegan v. Schrader (2001)91 Cal.App.4th 572, 579-580; Thorpe v. Long Beach Community College Dist. (2000) 83 Cal.App.4th 655, 659; Frazer-Yamor Agency, Inc. v. County of Del Norte (1977) 68 Cal.App.3d 201, 215.)
While ordinarily a board member cannot escape liability for a section1090 violation by abstaining from voting or from participating in discussions or negotiations (see Thomson v. Call, supra, 38 Cal.3d at p. 649; Fraser-Yamor Agency, Inc. v. County of Del Norte, supra, 68 Cal.App.3d at pp. 211-212), the Legislature has set forth a number of "remote interests" that allow a contract to be executed when the board member with the conflict abstains from participating.[2] Where a remote interest is present, the contract may be executed if (1) the member discloses his or her financial interest to the board, (2) the interest is noted in the board's official records, (3) the board authorizes, approves, or ratifies the contract in good faith without the vote of the member with the remote interest, and (4) the member with the remote interest neither influences nor attempts to influence any other member of the board to enter into the contract. (§ 1091, subds. (a) and (c); see 83 Ops.Cal.Atty.Gen., supra, at p. 248; 78 Ops.Cal.Atty.Gen., supra, at pp. 235-238; 65 Ops.Cal.Atty.Gen. 305, 307 (1982).)
Here, the remote interest exception covers "a supplier of goods or services when those goods or services have been supplied to the contracting party by the officer for at least five years prior to his or her election or appointment to office." (§ 1091, subd. (b)(8).) While the board member in question has been a supplier of promotional products and services to the business firms for at least five years prior to his election to his current term, he does not qualify for this exception if the five-year period is measured from the commencement of his initial term of office.
In analyzing section 1091, subdivision (b)(8), we may contrast its language with the language of section 1091, subdivision (b)(2), which additionally defines a remote interest as:
"That of an employee or agent of the contracting party, if the contracting party has 10 or more other employees and if the officer was an employee or agent of that contracting party for at least three years prior to the officer initially accepting his or her office. . . ."
Had the Legislature intended the five-year period specified in section1091, subdivision (b)(8), to commence prior to the board member's initial term of office, it could easily have so provided expressly, as it did in subdivision (b)(2). (See, e.g., State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1076, 1082.) "[W]e consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part. . . ." (Curle v. Superior Court (2000) 24 Cal.4th 1057, 1063.) "When the Legislature `has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' [Citations.]" (Pasadena Police Officers Assn. v. City of Pasadena (1990) 51 Cal.3d 564, 576.) These rules of statutory construction support the conclusion that the five-year period of subdivision (b)(8) refers to the current term of office rather than the initial term.
Construing section 1091, subdivision (b)(8), as relating to the current term of office is also consistent with our interpretation of section 1091.5, subdivision (a)(6), which describes as a noninterest:
"That of a spouse of an officer or employee of a public agency in his or her spouse's employment or officeholding if his or her spouse's employment or officeholding has existed for at least one year prior to his or her election or appointment."
We have interpreted the one-year period of this noninterest provision as relating to the current term of office rather than the initial term of office. (69 Ops.Cal.Atty.Gen. 255, 257 (1986); 69 Ops.Cal.Atty.Gen. 102, 103, 112-113 (1986); 65 Ops.Cal.Atty.Gen., supra, at p. 311.)
Accordingly, here, the Legislature has not required the five-year period of section 1091, subdivision (b)(8), to commence prior to the board member's initial term of office. It has determined that a business relationship of five years duration prior to the current term provides sufficient time to serve the purposes of section 1090, where the board member will not participate in or in any way influence the making of the contract. Moreover, such treatment provides equality for those who have served multiple terms of office and those who have not. We decline to require, in the guise of statutory interpretation, more than a five-year business relationship for those who have served multiple terms of office.
We thus conclude in answer to the first question that the board of a redevelopment agency may enter into an agreement with a business firm that purchases goods and services from a board member who has been a supplier of goods and services to the firm for at least five years prior to the commencement of his current term of office, although not for five years prior to the commencement of his initial term of office, if the board member does not participate in or influence the making of the agreement.[3]
2. Termination of the Business Relationship
The second question presented concerns whether the redevelopment agency board member with the remote interest may avoid section 1090's prohibition altogether by terminating his business relationships with the proposed contracting parties. If this were possible, he could participate in the negotiations and executions of the contracts. We conclude that he may.
Section 1091, subdivision (b)(8), does not prescribe a continuing time period during which the board member is precluded from entering into a contract other than, of course, the period of the actual conflict-when the board member is a supplier of goods or services. Only during this period would the board member have a financial interest in the contract by being able to personally benefit from selling goods or services to the contracting party. If the person does not have a business relationship with the contracting party while in office, and if he has no other financial interest in the contract, section 1090 has no application. Without being able to personally benefit, either directly under the contract or as a result of the ongoing business relationship while in office, the board member may participate in the making of the contract.
As in our analysis of the first question, we decline to add
words to section 1090 or to section 1091 in the guise of statutory interpretation. By so refusing, we follow well established rules of statutory interpretation. "The words of the statute are the starting point." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735.) "`If the language is clear and unambiguous there is no need for construction. . . .'" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973,977.) "[A] statute `. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation]." (Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1097.)
Of course, we assume that the termination of the business relationship will be made in good faith and in keeping with the purposes of section1090. If the business relationship is not terminated in a manner that removes "the possibility of any personal influence, either directly or indirectly" (Stigall v. City of Taft, supra, 58 Cal.2d at p. 569), the prohibition of section 1090 will remain in effect. As the Supreme Court noted in People v. Deysher (1934) 2 Cal.2d 141, 146, "`However devious and winding the chain may be which connects the officer with the forbidden contract, if it can be followed and the connection made, the contract is void.'" (See also Thomson v. Call, supra, 38 Cal.3d at pp. 648-649; Stigall v. City of Taft, supra, 58 Cal.3d at p. 571; City Council v. McKinley, supra, 80 Cal.App.3d at p. 212; People v. Sobel (1974) 40 Cal.App.3d 1046, 1052.)
We thus conclude in answer to the second question that the board of a redevelopment agency may enter into an agreement with a business firm that purchases goods and services from a board member who has been the supplier of goods and services to the firm if the board member first terminates his business relationship with the firm.
[1] All further statutory references are to the Government Code unless otherwise indicated.
[2] The Legislature has also defined several "noninterests" that fall outside the scope of section 1090. (§ 1091.5.) Where a noninterest is present, the contract may be executed even without the affected officer's abstention or general disclosure. (City of Vernon v. Central Basin Mun. Water Dist. (1999) 69 Cal.App.4th 508, 514-515; 84 Ops.Cal.Atty.Gen. 158, 159-160 (2001); 83 Ops.Cal.Atty.Gen. 246, 247 (2000).) An examination of section 1091.5 reveals no noninterest exceptions that would be applicable to the proposed redevelopment agreements.
[3] The Political Reform Act of 1974 (§§ 81000-91015) also generally prohibits public officials from participating in the making of governmental decisions in which they have a financial interest. (§ 87100; 78 Ops.Cal.Atty.Gen. 362, 373 (1995); 70 Ops.Cal.Atty.Gen. 45, 46 (1987).) So too does the common law doctrine against conflicts of interest applicable in California. (See Kuner v. Brea Redevelopment Agency (1997) 55 Cal.App.4th 511,519; Clark v. City of Hermosa Beach (1996) 48 Cal.App.4th 1152, 1171; 64 Ops.Cal.Atty.Gen. 795, 797 (1981).) Neither, however, would prevent the redevelopment agency board from entering into the proposed agreements or require more of the board member with the remote interest than does section 1091. (See 81 Ops.Cal.Atty.Gen. 274, 280-281 (1998); 78 Ops.Cal.Atty.Gen., supra, at p. 374; 73 Ops.Cal.Atty.Gen. 191, 196 (1990); 70 Ops.Cal.Atty.Gen. 157, 161-162 (1987); 26 Ops.Cal.Atty.Gen. 5, 6-7 (1955).) Finally, in some limited circumstances not applicable here, the "rule of necessity" allow contracts to be executed despite the prohibition of section 1090 in order to acquire essential goods or services. (See Eldridge v. Sierra View Local Hospital Dist. (1990)224 Cal.App.3d 311, 321; 65 Ops.Cal.Atty.Gen., supra, at p. 310.)