Filed 1/23/14; pub. order 2/21/14 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GILBANE BUILDING COMPANY,<br><br>　　　Petitioner,<br><br>　　　v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>　　　Respondent;<br><br>SAN DIEGANS FOR OPEN<br>GOVERNMENT,<br><br>　　　Real Party in Interest. | D063685<br><br>(San Diego County Super. Ct. No. 37-2012-00091137-CU-MC-CTL) |

PROCEEDINGS IN MANDATE after the superior court overruled petitioner's demurrer to real party in interest's first amended complaint.  William S. Dato, Judge.  Petition denied.

McKenna Long & Aldridge, Charles A. Bird, Christian D. Humphreys and Gary K. Brucker, Jr., for Petitioner.

Briggs Law, Cory J. Briggs, Mekaela M. Gladden, and Anthony N. Kim for Real Party in Interest.

Gilbane Building Company (Gilbane) petitions for writ of mandate challenging the trial court's overruling of its demurrer to San Diegans for Open Government's (SanDOG) first amended complaint. In that complaint, SanDOG asserted claims against Gilbane and other construction companies seeking to disgorge all monies those companies allegedly illegally received from contracts with the Sweetwater Union High School District (the District). Gilbane contends the trial court erred in overruling its demurrer because (1) SanDOG does not have standing on its own and cannot rely on the standing of its members; and (2) SanDOG cannot pursue its action because it failed to allege it made a demand on the District to sue and the District refused. We reject Gilbane's arguments and deny the petition.

BACKGROUND

The San Diego District Attorney's Office investigated allegations that some of the District's board members and its superintendant failed to report gifts and travel funds and misused the District's credit card. The investigation revealed a "pay to play" culture in which Gilbane and other companies provided gifts to the District's officials and their family members in exchange for construction contracts worth several million dollars.

After SanDOG discovered the improper gifts, it informed the District of its intent to sue Gilbane and others and inquired whether the District wanted to prosecute the action with SanDOG. The District did not respond.

SanDOG filed this action against Gilbane, seeking declaratory relief, imposition of a constructive trust on all consideration received by Gilbane, judgment that all consideration be returned to the District, an injunction preventing Gilbane from

disbursing monies received from the contracts, and other unspecified relief. SanDOG alleged that at least one of its members resided in and paid taxes within the District and had an interest in ensuring the District's compliance with all conflict of interest laws and maintaining open, transparent government decisionmaking. SanDOG further alleged that it was suing on its own behalf, for its own benefit, for the benefit of its members, for all persons similarly situated, for all taxpayers within the geographical jurisdiction of the District, and for the District.

Gilbane demurred to SanDOG's first amended complaint, arguing, among other things, that SanDOG lacked standing to sue because SanDOG did not pay taxes within the District. Gilbane also alleged SanDOG's action was improper because the District had discretion whether to sue Gilbane. SanDOG opposed the demurrer, contending that an organization who has members paying taxes within the District has standing to bring the action.

The trial court overruled Gilbane's demurrer, finding SanDOG alleged sufficient facts to invoke associational standing to pursue taxpayer suits under Code of Civil Procedure section 526a (section 526a). The trial court also found "[t]he rule that a taxpayer lacks standing to sue on behalf of a public agency unless the agency has a duty to sue and refused to do so does not apply to a case such as this" because "SanDOG [was] not seeking to usurp the District's discretion in managing its affairs."

DISCUSSION

I. *Associational Standing*

Section 526a provides: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or within one year before the commencement of the action, has paid, a tax therein . . . ."

Here, SanDOG alleged that at least one of its members resided in and paid taxes within the District and had an interest in ensuring the District's compliance with all conflict of interest laws and maintaining open, transparent government decisionmaking. Gilbane does not contend that SanDOG's members do not have standing individually; rather, Gilbane argues SanDOG does not have standing on its own and cannot rely on the standing of its members. We disagree.

The issue presented in this case was recently decided by this Court in *Taxpayers for Accountable School Bond Spending v. San Diego Unified School District* (2013) 215 Cal.App.4th 1013, 1031-1033 (*Taxpayers*). In that case, an organization brought an action arising out of a school district's approval of new stadium field lighting and other improvements. (*Id*. at p. 1021.) As in this case, the school district challenged the action on the basis of the organization's standing because the organization "[did] not pay taxes as an organization." (*Id.* at p. 1031.) The court rejected the school district's argument, reasoning: "we are not aware of, any case that holds a representative organization cannot

4

bring a taxpayer action under . . . section 526a or a citizen action if that organization represents members who, as individuals, would have standing to personally bring that cause of action. On the contrary, it has been held a representative organization or association may have standing to bring an action if its members would have had standing to bring that action as individuals." (*Ibid*.) Accordingly, the court concluded even though the organization itself did not pay taxes, it had standing because its members were taxpayers and residents within the school district. (*Id.* at p. 1032.)

We see no reason to depart from the holding in *Taxpayers*. Accordingly, we reject Gilbane's associational standing argument.

## II. *Demand and Refusal*

Gilbane argues SanDOG cannot pursue its action because it failed to allege it made a demand on the District to sue and the District refused that demand. We reject this argument.

The Government Code prohibits members of a district from being "financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." (Gov. Code, § 1090 (§ 1090).) "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein." (Gov. Code, § 1092.) Courts have interpreted this language to mean that a contract made in violation of section 1090 is void, not merely voidable. (*Thomson v. Call* (1985) 38 Cal.3d 633, 646, fn. 15.) "It is settled law that where a contract is made in violation of section 1090, the public entity involved is entitled to recover any compensation that it has paid under the contract

5

without restoring any of the benefits it has received."  (*Finnegan v. Shrader* (2001) 91 Cal.App.4th 572, 583.)

Taxpayers may sue under section 1090 in order to have improper contracts declared void.  (See *Finnegan v. Schrader*, *supra*, 91 Cal.App.4th 572 [taxpayer brought action under section 1090 against a sanitation district and its manager to have the manager's employment contract declared void]; *Thomson v. Call*, *supra*, 38 Cal.3d 633, 637-638 [taxpayer sued the city, several city council members, and various corporations under section 1090 to challenge the validity of a land transaction in which a city council member conveyed land to a corporation who in turn conveyed it to the city].)  These lawsuits may be against the public agency as well as the private parties who entered into the improper contract with the public agency.  (See *Terry v. Bender* (1956) 143 Cal.App.2d 198; *Thomson*, *supra*, at pp. 637-638.)

However, "[a] taxpayer may not bring an action on behalf of a public agency unless the governing body has a duty to act, and has refused to do so.  If the governing body has discretion in the matter, the taxpayer may not interfere."  (*Silver v. Watson* (1972) 26 Cal.App.3d 905, 909.)  "The rule is explained in . . . *Dunn* [*v. Long Beach Land & Water Co.* (1896) 114 Cal. 605, 609] . . . : 'The rule is that the municipality, through its governing body, has control of the property and general supervision over the ordinary business of the corporation; and there would be utter confusion in such matters if every citizen and taxpayer had the general right to control the judgment of such body, or usurp the office.  Where the thing in question is within the discretion of such body to do or not to do, the general rule is that then neither by *mandamus*, *quo warranto*, or other

6

judicial proceeding, can either the state or a private citizen question the action or nonaction of such body; nor in such cases can a private citizen rightfully undertake to do that which he thinks such body ought to do. It is only where performance of the thing requested is enjoined as a duty upon said governing body that such performance can be compelled, or that a private citizen can step into the place of such body and himself perform it.' " (*Silver*, *supra*, at p. 909.) Where the public agency has expended funds illegally or for an unlawful purpose and its management is in the hands of the persons accused of the wrongdoing, a taxpayer is not required to make a demand on the public agency as it would be unavailing. (*Osburn v. Stone* (1915) 170 Cal. 480, 482; *Citizens' Committee for Old Age Pensions v. Board of Sup'rs of Los Angeles County* (1949) 91 Cal.App.2d 658, 660.)

Here, the parties dispute whether a demand to the District and refusal was required before SanDOG could initiate its action against Gilbane. The demand and refusal requirement does not apply in this case because SanDOG is not seeking to usurp the District's discretion in managing its affairs. Rather, if the allegations in SanDOG's complaint are true, the District expended funds illegally and the subject contracts are void, not merely voidable. Whether the contracts are void is not a matter within the District's discretion.

We also conclude that a demand was not required under the circumstances of this case because it would have been unavailing. SanDOG alleged the District's officials, including its board members, were involved in the wrongdoing subject to its lawsuit. It is unlikely that the District's officials would have initiated a lawsuit to correct its own

7

wrongs.  Where, as here, "the facts alleged in the complaint sufficiently show that . . . a demand would have been useless, and when it appears from the complaint that a demand would have been unavailing, it is not required."  (*Briare v. Mathews* (1927) 202 Cal. 1, 9.)

Even if a demand and refusal was required, SanDOG alleged that "[b]efore commencing this lawsuit, [it] notified DISTRICT of [its] intent to file this lawsuit and inquiring whether DISTRICT would like to prosecute the action with [SanDOG], but [SanDOG] has never received a response."  Gilbane argues this allegation was insufficient because it "invited the District to *join* SanDOG" in commencing the action instead of demanding the District initiate the action and does not show the District refused.  We reject Gilbane's argument.

In our view, the purpose of the demand requirement is to put a public agency on notice of wrongdoing and give it the opportunity to commence an action on behalf of its constituents.  SanDOG's allegation satisfies the purpose of the demand requirement.  Further, SanDOG alleged the District did not respond.  If we were to construe the refusal requirement as Gilbane suggests and require an actual refusal, a public agency could prevent taxpayer initiated litigation simply by failing to respond to any demand.  This result would not comport with the policy supporting taxpayer actions.

DISPOSITION

The petition is denied.  SanDOG is entitled to costs in this proceeding.

McINTYRE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

Filed 2/21/14

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GILBANE BUILDING COMPANY, | D063685 |
| Petitioner, | |
| | (San Diego County Super. Ct. No. 37- |
| v. | 2012-00091137-CU-MC-CTL) |
| THE SUPERIOR COURT OF | |
| SAN DIEGO COUNTY, | ORDER CERTIFYING OPINION FOR |
| | PUBLICATION |
| Respondent; | |
| SAN DIEGANS FOR OPEN GOVERNMENT, | |
| Real Party in Interest. | |

THE COURT:

The opinion filed on January 23, 2014 is ordered certified for publication.

McINTYRE, Acting P. J.

Copies to:  All parties

10