# IN THE SUPREME COURT OF CALIFORNIA

SAN DIEGANS FOR OPEN GOVERNMENT,
Plaintiff and Appellant,

v.

PUBLIC FACILITIES FINANCING AUTHORITY OF THE
CITY OF SAN DIEGO et al.,
Defendants and Respondents.

S245996

Fourth Appellate District, Division One
D069751

San Diego County Superior Court
37-2015-00016536-CU-MC-CTL

---

December 26, 2019

Justice Corrigan authored the opinion of the Court, in which Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

Chief Justice Cantil-Sakauye filed a concurring and dissenting opinion.

---

SAN DIEGANS FOR OPEN GOVERNMENT v. PUBLIC
FACILITIES FINANCING AUTHORITY OF THE CITY OF
SAN DIEGO

S245996

Opinion of the Court by Corrigan, J.

A citizens' taxpayer organization sued to invalidate
certain contracts allegedly made in violation of Government
Code section 1090. The question is whether Government Code
section 1092 gives plaintiff the statutory standing to do so. We
hold that section 1092[1] does not provide plaintiff a private right
of action because it was not a party to the contracts. The Court
of Appeal's judgment to the contrary is reversed. The matter is
remanded for further proceedings.

## I. BACKGROUND

Under section 1090, government officials and employees
cannot be financially interested in any contract made by them
in their official capacity or by any body of which they are a
member. The statute codifies the long-standing common law
rule prohibiting public officials from having personal financial
interests in contracts they form in their official capacities.
(*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.) Both the
common law and section 1090 "recognize '[t]he truism that a
person cannot serve two masters simultaneously.'" (*Lexin*, at p.
1073, quoting *Thomson v. Call* (1985) 38 Cal.3d 633, 637

---

[1]    All    unspecified    statutory    references    are    to    the
Government Code.

1

(*Thomson*); see also *San Diego v. S. D. & L. A. R. R. Co.* (1872) 44 Cal. 106, 113.) Section 1090 has a broad reach, prohibiting both direct and indirect financial interests in public contracts. (See *Moody v. Shuffleton* (1928) 203 Cal. 100, 103-105.) The penalty for a violation is substantial: The interested official must disgorge any profits earned, and may not recover any consideration paid, under the contract. (*Thomson*, at pp. 646-652.)

Section 1092 provides that any contract made in violation of section 1090 "may be avoided at the instance of any party except the officer interested therein." (§ 1092, subd. (a).) The dispute here revolves around the meaning of the phrase "any party." Some background will provide context.

In 2007, the City of San Diego issued bonds to finance the construction of Petco Park. In 2015, the City sought to refinance the remaining debt on those bonds. It adopted an ordinance and its Public Facilities Financing Authority (PFFA) passed a resolution authorizing the issuance of new bonds to accomplish the refinancing.[2] Shortly thereafter, San Diegans for Open Government (plaintiff) sued the City and PFFA (collectively, defendants), asserting that aspects of the refinancing transaction violated section 1090 because at least one member of the financing team, which included both city employees and private organizations, had a financial "interest in one or more contracts for the sale of the 2015 Bonds." Plaintiff claimed it was seeking relief "under Code of Civil Procedure Sections 860

---

[2] PFFA is a joint powers authority that was originally established by the City and its redevelopment agency to assist in the financing of public capital improvements.

*et seq.* and 1060 *et seq.*" The complaint asserted a single cause of action, alleging that the bond issuance violated provisions of the California Constitution, the City's charter and municipal code, and section 1090. Plaintiff sought a judgment declaring the bond transaction's approval unlawful and an injunction prohibiting defendants from acting to further the bond issuance.

Plaintiff ultimately agreed to entry of judgment as to all allegations except the section 1090 violation. Defendants then argued that plaintiff lacked standing as to that issue, citing *San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679 (*San Bernardino*). Plaintiff argued it had standing under section 1092 and Code of Civil Procedure section 526a.[3] Plaintiff also mentioned it had timely filed its action under the validation statutes. (Code Civ. Proc., § 860 et seq.) The trial court ruled for defendants, concluding that section 1092 only confers standing on the *parties to a challenged contract*, and that plaintiff also lacked standing under Code of Civil Procedure section 526a. The remaining action was dismissed.

---

[3]    Code of Civil Procedure section 526a permits certain individuals and corporations to sue "to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to" a local agency's funds or property. (Code Civ. Proc., § 526a, subd. (a); see also *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1245 (*Weatherford*).) The "primary purpose" of the statute "is to 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' [Citation.]" (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-268.)

Plaintiff appealed. In the Court of Appeal, the parties agreed that Code of Civil Procedure section 863 did not provide plaintiff an independent right of action to assert a section 1090 violation.[4] As to whether plaintiff could proceed under Code of Civil Procedure section 526a, plaintiff argued that it could, while defendants argued subdivision (b) of that provision barred plaintiff's claims for relief.[5]

The Court of Appeal held that the term "party" in section 1092 means "any litigant with an interest in the subject contract sufficient to support standing," and that plaintiff possessed such an interest. (*San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2017) 16 Cal.App.5th 1273, 1284 (*San Diegans*).) Because it found plaintiff could pursue its claim under section 1092, it did not decide whether plaintiff could proceed under Code of Civil Procedure section 526a. (*San Diegans*, at p. 1285, fn. 4.)

---

[4] The parties presented no argument here on whether or how Code of Civil Procedure section 863 might apply to this action. We express no opinion on the matter.

[5] Subdivision (b) of Code of Civil Procedure section 526a prohibits the granting of an injunction "restraining the offering for sale, sale, or issuance of any municipal bonds" for public improvements or facilities. Defendants asserted this subdivision barred plaintiff from proceeding under Code of Civil Procedure section 526a because, if plaintiff obtained the relief it sought, the effect would be to enjoin the bond issuance.

## II. DISCUSSION

*A. General Rules Regarding Standing and Causes of Action*

"Unlike the federal Constitution, our state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine." (*Weatherford*, *supra*, 2 Cal.5th at pp. 1247-1248.) Typically, to have standing, a plaintiff must plead an actual justiciable controversy and have some "special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796.) This requirement has been relaxed in some contexts. For example, California courts have consistently held that taxpayers have standing to prevent illegal conduct by public officials despite the lack of a special interest or right distinct from that belonging to the general public. (See e.g., *Weatherford*, at p. 1248; *Crowe v. Boyle* (1920) 184 Cal. 117, 152; *Mock v. City of Santa Rosa* (1899) 126 Cal. 330, 345.)

Though standing requirements are construed more liberally in litigation enforcing public rights, a plaintiff suing under a particular statute still must show that it is among those with "a statutory right to relief." (*Weatherford*, *supra*, 2 Cal.5th at p. 1248.) Here, the question is whether plaintiff has a cause of action creating a right to relief under section 1092. "Whether a *statute* gives rise to a private right of action is a question of legislative intent." (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 609; see also *Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 466.) The intent may be express or implied (*Lu v. Hawaiian Gardens Casino, Inc.*

(2010) 50 Cal.4th 592, 597 (*Lu*)), but either way "the Legislature must clearly manifest an intent to create a private cause of action under [the] statute" (*id.* at p. 601, fn. 6, citing *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 295). The burden of persuasion is with the party claiming a statutory right to sue. (*Lu*, at p. 601.)

### B.   *Plaintiff Cannot Sue Under Section 1092*

Section 1092 provides in relevant part that "[e]very contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein." (§ 1092, subd. (a).) Defendants argue the phrase "any party" includes only parties to the challenged contract. Plaintiff argues the phrase applies more broadly to embrace other interested persons and organizations like itself.

The Court of Appeal agreed with plaintiff. It reasoned that the "important policy embodied in section 1090 . . . will not be vindicated if public officials believe section 1090's substantive provisions may only be enforced by the very public officials or public entities who have violated the statute's provisions." (*San Diegans*, *supra*, 16 Cal.App.5th at pp. 1283-1284.) "[A] public official's duty to avoid *even temptation* cannot be advanced by adopting a rule which limits civil enforcement to that public official or public entities controlled by the official." (*Id.* at p. 1284.) The court also found that the "weight of authority" stood for the proposition that "standing to assert section 1090 claims goes beyond the parties to a public contract." (*Ibid.*)[6] Based on

---

[6]   In support of this conclusion, the Court of Appeal cited *Thomson, supra*, 38 Cal.3d 633, *Stigall v. City of Taft* (1962) 58

"that authority and the important and strict policy embodied in section 1090," the court interpreted "section 1092's reference to 'any party' to include any litigant with an interest in the subject contract sufficient to support standing." (*San Diegans*, at p. 1284.) This would include, according to the court, parties with interests sufficient to support standing under Code of Civil Procedure sections 526a and 863. (*San Diegans*, at p. 1285.)

We read the statute differently. "We begin with the text of the statute as the best indicator of legislative intent." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 844.) The statute refers to a "contract made in violation" of section 1090, then provides that any such contract "may be avoided by any party except the officer interested therein." (§ 1092, subd. (a).) The most natural reading of this language is that the phrase "any party" refers back to the contract; that is, any party *to the contract* can sue to avoid it. The use of the word avoid in section 1092 also supports this construction. Typically, we speak of a party to a contract avoiding its legal obligations thereunder. (See e.g., Rest.2d Contracts, § 7 ["[a] voidable contract is one where one or more parties have the power . . . to avoid the legal relations created by the contract"].) Indeed, the Restatement Second of Contracts notes that "[a]voidance is often referred to as 'disaffirmance.'" (Rest.2d Contracts, § 7, com. b, p. 20.) A

Cal.2d 565 (*Stigall*), *California Taxpayers Action Network v. Taber Construction, Inc.* (2017) 12 Cal.App.5th 115 (*California Taxpayers*), *McGee v. Balfour Beatty Construction, LLC* (2016) 247 Cal.App.4th 235 (*McGee*), *Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261 (*Davis*), *Gilbane Building Co. v. Superior Court* (2014) 223 Cal.App.4th 1527 (*Gilbane*), *Finnegan v. Schrader* (2001) 91 Cal.App.4th 572 (*Finnegan*), and *Terry v. Bender* (1956) 143 Cal.App.2d 198 (*Terry*).

non-party does not possess the power to affirm or disaffirm a contract. (*Ibid.* ["[u]sually the power to avoid is confined to one party to the contract, but [under certain circumstances] the contract may be voidable by either one of the parties"].)

This conclusion finds further support in provisions of the Civil Code governing the formation and interpretation of contracts. (See *Smith v. Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143, 1156 [reviewing the "Legislature's use of the words 'marital status'" in the Family and Probate Codes to determine the meaning of that word in a Government Code provision]; see also *Pesce v. Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 310, 312; *Picayune Rancheria of Chukchansi Indians v. Brown* (2014) 229 Cal.App.4th 1416, 1428.) Civil Code section 1559, for example, provides that a "contract, made expressly for the benefit of a third *person*, may be enforced by him at any time before the *parties* thereto rescind it." (Italics added.) In this provision, the Legislature uses the term "party" to refer to a contractual party,[7] as distinguished from a "person," who is not a contractual party.[8] The careful usage of these terms in the

---

[7] See also Civil Code sections 1558 ["[i]t is essential to the validity of a contract . . . that the *parties* should exist [and] that it should be possible to identify them," italics added]; 1636 ["[a] contract must be so interpreted as to give effect to the mutual intention of the *parties* as it existed at the time of contracting," italics added]; 1689, subd. (a) ["[a] contract may be rescinded if all the *parties* thereto consent," italics added].

[8] See also Civil Code sections 1556 ["[a]ll *persons* are capable of contracting, except minors, *persons* of unsound mind, and *persons* deprived of civil rights," italics added]; 1586 ["[a] proposal may be revoked at any time before its acceptance is

Civil Code indicates that, when the Legislature uses the term "party" in a statute referencing a contract, it typically means a party to that contract.

The *San Bernardino* court construed section 1092 in this fashion. There, two taxpayer groups attempted to rely on section 1092 and Code of Civil Procedure section 526a to avoid a settlement agreement between a county and a partnership after a supervisor who voted in support pled guilty to accepting bribes. (*San Bernardino, supra,* 239 Cal.App.4th at p. 683.) The trial court overruled the defendants' demurrer, which argued that the plaintiffs lacked standing. (*Ibid.*) The Court of Appeal reversed. Rejecting the plaintiffs' argument that they were entitled to sue under section 1092, the court reasoned that nothing in the statute's plain language "grants nonparties to the contract . . . the right to sue on behalf of a public entity that may bring a claim as provided in section 1092." (*San Bernardino,* at p. 684.) Indeed, "the Legislature's choice of the word 'party' in section 1092—as opposed to, say, 'person'—suggests the Legislature intended only parties to the contract at issue normally to have the right to sue to avoid contracts made in violation of section 1090." (*Ibid.*)

Plaintiff argues the term "party" in section 1092 should be read to include persons who are not parties to the challenged contract. Plaintiff argues section 1092's exception, which prohibits "the officer interested therein" from suing to avoid a

---

communicated to the *proposer*, but not afterwards," italics added]; 1670.7 [declaring void any contract that "purports to allow a deduction from a *person's* wages" for emigration and transportation costs, italics added].

contract (§ 1092, subd. (a)), supports its construction. Because
the agency, not the officer, would normally be the party to the
contract, there would have been no reason according to plaintiff
for the Legislature to create this exception unless the term
"party" includes those who are not parties to the contract.

This argument is easily rejected. To be sure, *on the
government's side*, the public agency typically would be the
contractual party. But the financially interested officer could of
course be one of the *other* parties to a challenged contract. In
*County of Shasta v. Moody* (1928) 90 Cal.App. 519, for example,
the defendant owned a printing business and was also a county
supervisor. While the defendant held that public office, "he did
printing, advertising, job work and sold supplies to . . . various
county officials of the county of Shasta, including the board of
supervisors," and was paid for that work. (*Moody*, at p. 520.) In
other words, the county was *one party* to the contract that
allegedly violated section 1090, and the financially interested
officer was the *other party* to that contract. (See also *Berka v.
Woodward* (1899) 125 Cal. 119, 121.) The exception prohibiting
suit by an interested officer would prevent that officer from
suing *on his or her own behalf*, as a contractual party, to avoid
the contract. Thus, the phrase "any party" need not be read to
include nonparties in order for that exception to make sense.

Plaintiff also argues the term "party" could be read to
include a party to litigation concerning the contract. Plaintiff
points out that, in the article of the Government Code in which
sections 1090 and 1092 are found,[9] the word "party" is followed

---

[9]     Sections 1090 and 1092 are in article 4 of chapter 1 of
division 4 of title 1 of the Government Code.

by the qualifier "to any proceeding" on one occasion (§ 1091.4, subd. (b)) and by the qualifier "to litigation" on another (§ 1091, subd. (b)(15)). Plaintiff urges that the use of these qualifiers shows the term "party" has a broader meaning in this context and includes persons other than the contractual parties.[10]

These textual arguments fall short. As mentioned, the sentence in which the phrase "any party" appears begins by referencing a "contract made in violation" of section 1090. (§ 1092, subd. (a).) The word "party" may not be directly adjacent to the qualifiers set out above, but it is most natural to read that word as referring back to the contract mentioned at the beginning of the sentence. Indeed, the Legislature may have thought it unnecessary to qualify the term "party" in section 1092, subdivision (a), because that subdivision already references a contract made in violation of section 1090. To add the qualifier "contracting" to the phrase "any party" in section 1092 arguably would have been redundant.

In any event, the ultimate question is whether the Legislature has *clearly manifested* an intent to create a private right of action. (*Lu, supra*, 50 Cal.4th at p. 601, fn. 6.) If the

---

[10] The concurring and dissenting opinion makes a similar point. It notes that the word "party" appears in this article 35 times; that, in 32 of those instances, the word is directly preceded or followed by the qualifiers "contracting," "to the contract," or "to a contract"; that, in two of those instances, the word is followed by the qualifiers "to any proceeding" and "to litigation"; and that, "[o]nly in section 1092 does the word 'party' appear without any qualifier." (Conc. & dis. opn., *post*, at p. 7; see also *id*. at p. 7, fn. 5.) Thus, it is fair to infer "that the Legislature intended for the word 'party' within section 1092 to encompass more than a 'contracting party.'" (*Id*. at p. 7.)

Legislature has clearly expressed an intent one way or the other, "that usually ends the inquiry." (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 142.) If it has "expressed no intent on the matter either way, . . . there is no private right of action [citation], with the possible exception that compelling reasons of public policy might require judicial recognition of such a right." (*Ibid.*, citing *Moradi-Shalal v. Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at pp. 304-305.)

Here, the Legislature has clearly expressed an intent that parties to public contracts may sue to avoid those contracts under section 1092. As to nonparties, however, there is no such clear expression of intent.[11] Accordingly, we cannot find that plaintiff has a private right of action unless there are compelling policy reasons to do so. Those reasons do not exist here. The Court of Appeal based its interpretation of section 1092 on both case law and the necessity of vindicating the policies embodied in section 1090. Neither reason compels us to read an intent into the statute that does not appear on its face.

### 1. The Case Law

None of the cases cited by the Court of Appeal addressed the precise issue presented: Whether a nonparty taxpayer can

---

[11] Moreover, as noted, the Legislature has prohibited injunctions restraining municipal bond offerings, sales, and issuances. (Code Civ. Proc., § 526a, subd. (b).) There appear to be sound policy reasons underlying that prohibition. (Cf. *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1167-1168.) Construing section 1092 to permit nonparties to sue to avoid contracts for section 1090 violations would effectively provide an end-run around the Legislature's bar on claims seeking to enjoin municipal bond issuances.

sue under section 1092 to avoid a government contract on conflict-of-interest grounds. The case law has been less than clear in discussing the distinction between standing and causes of action. Although a number of cases cited by both parties purport to address a taxpayer's "standing" to enforce section 1090, these cases ultimately address whether a taxpayer had a cause of action under either Code of Civil Procedure section 526a or section 1092. In *Terry*, *supra*, 143 Cal.App.2d 198, for example, the plaintiff brought a taxpayer action under Code of Civil Procedure section 526a, alleging a city's payment of a warrant would violate section 1090. (*Terry*, at pp. 201, 206-207.) The Court of Appeal did not discuss whether the plaintiff could sue under section 1092. Instead it ruled that Code of Civil Procedure section 526a provided "express statutory authorization to maintain [the] action." (*Terry*, at p. 208.)

Similarly, in *Gilbane*, *supra*, 223 Cal.App.4th 1527, the plaintiff sued under Code of Civil Procedure section 526a alleging that contracts between a school district and certain construction companies violated section 1090. (*Gilbane*, at p. 1530.) The Court of Appeal found the plaintiff had "associational standing" under Code of Civil Procedure section 526a, and did not discuss whether section 1092 authorized the plaintiff to sue. (*Gilbane*, at p. 1531.) *Terry* and *Gilbane* thus stand for the proposition that a nonparty taxpayer can invoke the substantive prohibitions of section 1090 in an action authorized by Code of Civil Procedure section 526a. They do not, however, support the conclusion that a nonparty taxpayer can sue to avoid a public contract under section 1092.

Neither do *Stigall*, *Thomson*, and *Finnegan*. In *Stigall*, *supra*, 58 Cal.2d 565, this court did not address whether the

plaintiff could sue under section 1092. We simply noted that the plaintiff taxpayer sought a declaration that a plumbing contract was invalid under section 1090 (*Stigall*, at pp. 566-568), and then proceeded to the merits of the claim.[12] In *Thomson*, *supra*, 38 Cal.3d 633, the question was "what remedies are available once a section 1090 violation is found and the fully performed underlying contract is adjudged void." (*Thomson*, at p. 638.) It had already been determined in an earlier suit that the contract violated section 1090. (*Thomson*, at pp. 637-638.) Thus, we were not called upon in *Thomson* to determine whether the plaintiff could sue under section 1092.[13]

In *Davis*, *supra*, 237 Cal.App.4th 261, the Court of Appeal concluded that a taxpayer had alleged facts sufficient to state a section 1090 claim. (*Davis*, at pp. 270, 271, 301.) The court also opined that "[t]he term 'any party' [in section 1092] is not restricted to parties to the contract." (*Id*. at p. 297, fn. 20.) That statement was dictum; as the court noted, the defendants had not challenged the plaintiff's "standing to bring the conflict of

---

[12] Like *Stigall*, *Finnegan* involved a "taxpayer's suit" seeking a declaration that a government contract violated section 1090. (*Finnegan*, *supra*, 91 Cal.App.4th at p. 575.) The court did not address the question of standing. Nor did it address whether the plaintiff was authorized to bring his suit under section 1092.

[13] The concurring and dissenting opinion argues that "*Thomson* . . . shows that a nonparty can seek to avoid the terms of a contract." (Conc. & dis. opn., *post*, p. 6.) But our analysis in *Thomson*, *supra*, 38 Cal.3d 633 did not expressly rely on the operation or application of section 1092. We do not dispute that a taxpayer can invoke the conflict-of-interest rule in section 1090 to challenge a public contract. The question is whether he or she may do so under section 1092, and *Thomson* provides no answer.

interest claim under . . . section 1090." (*Ibid.*) Thus, *Davis* also does not support the conclusion that a nonparty taxpayer can sue under section 1092.

That leaves *McGee* and *California Taxpayers*. In *McGee, supra,* 247 Cal.App.4th 235, a taxpayer sued claiming that an agreement between a school district and a construction company violated a number of statutes, including section 1090. (*McGee,* at p. 239.) A demurrer was sustained in part on the ground the plaintiff lacked standing. (*Id.* at p. 246.) The Court of Appeal reversed, holding the plaintiffs had alleged a cause of action for a section 1090 violation. (*McGee,* at p. 246.) It did not mention section 1092. While *McGee* supports the conclusion that a taxpayer can assert a section 1090 violation, it does not hold that the plaintiff can sue under section 1092.

Like *McGee, California Taxpayers, supra,* 12 Cal.App.5th 115, involved a reverse validation claim that an agreement between a school district and a construction company violated section 1090 and other statutes. (*California Taxpayers,* at pp. 123-124.) The result was similar as well. The Court of Appeal reversed an order sustaining a demurrer as to the section 1090 claim. (*California Taxpayers,* at pp. 122, 145.) The court took note of *San Bernardino, supra,* 239 Cal.App.4th 679, but reasoned that *Gilbane, Davis,* and *McGee* "ha[d] recognized that an action under . . . section 1090 may be brought by a taxpayer." (*California Taxpayers,* at p. 141.) As explained, none of those cases addressed whether a nonparty taxpayer can sue under section 1092. *California Taxpayers* does not do so either.

In summary, there seems to be no dispute that a nonparty taxpayer whose action meets the requirements of Code of Civil Procedure section 526a can sue under that section alleging a

government contract violates section 1090. (See, e.g., *Terry*, *supra*, 143 Cal.App.2d 198; *Gilbane, supra*, 223 Cal.App.4th 1527.) Additionally, some cases have assumed that a plaintiff can invoke section 1090 without explaining the statutory authorization for the plaintiff's lawsuit. (See, e.g. *Thomson*, *supra*, 38 Cal.3d 633; *Stigall, supra*, 58 Cal.2d 565; *California Taxpayers, supra*, 12 Cal.App.5th 115; *McGee, supra*, 247 Cal.App.4th 235; *Davis, supra*, 237 Cal.App.4th 261; *Finnegan*, *supra*, 91 Cal.App.4th 572.) But whether a plaintiff may invoke section 1090 and whether a plaintiff may sue to avoid a contract under section 1092 are distinct questions. None of the cases the Court of Appeal cites support the conclusion that a nonparty may sue *under section 1092* to avoid a contract. The only case to directly consider the question held that section 1092 did not create a private right of action. (*San Bernardino, supra*, 239 Cal.App.4th at pp. 684-685.)

### 2.    *Compelling Policy Reasons*

Nor is the Court of Appeal's interpretation of section 1092 necessary to vindicate the policies embodied in section 1090. Section 1092 is not the only vehicle for enforcing the substantive prohibitions in section 1090. On the contrary, the conflict-of-interest rule is backed by an array of administrative, civil, and criminal enforcement mechanisms.

First, the Attorney General or a district attorney can criminally prosecute a person who willfully violates section 1090 (§ 1097.1, subd. (b)) and, if convicted, that person can be punished by a fine or by imprisonment, and is "forever disqualified from holding any office in this state" (§ 1097, subd. (a)). Second, the Fair Political Practices Commission (the Commission) can bring an administrative action against any

16

person who has violated section 1090. (§ 1097.1, subd. (a).) The Commission can "investigate possible violations of Section 1090" (§ 1097.2, subd. (a)), issue subpoenas (§ 1097.2, subd. (e)), and hold hearings to determine if a violation occurred (§ 1097.2, subd. (c)). The Commission may also file "a civil action for an alleged violation of Section 1090." (§ 1097.3, subd. (a).) If held liable, the violator may be fined up to $10,000 or three times the value of the financial benefit received. (*Ibid.*) The existence of such a comprehensive enforcement scheme is strong evidence the Legislature did not intend to create a private right of action for nonparties to the contract. (See *Animal Legal Defense Fund v. Mendes, supra,* 160 Cal.App.4th at pp. 143-144; *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 136.)

Because violations of section 1090 can be challenged by contractual parties under section 1092, by taxpayers under Code of Civil Procedure section 526a where appropriate, and by the Attorney General, district attorneys, and the Fair Political Practices Commission, there is no compelling reason to conclude that section 1092 creates a private right of action for nonparties to sue to avoid public contracts.[14]

C. *Plaintiff May Be Able To Proceed Under Code of Civil Procedure Section 526a*

Below, the parties debated whether plaintiff's claims for relief were permitted or barred by Code of Civil Procedure section 526a, based on the particular facts alleged. As mentioned, the Court of Appeal declined to address the question.

---

[14]    To the extent *Holloway v. Showcase Realty Agents, Inc.* (2018) 22 Cal.App.5th 758 is inconsistent with this opinion, we disapprove that decision.

The parties argued each side of the issue in their briefs to this court. Neither party disputes that Code of Civil Procedure section 526a is, as a general rule, available to taxpayers who wish to challenge government contracts affected by financial conflicts of interest. We agree. (See *ante*, pp. 15-16.) But the statute also prohibits the granting of an injunction "restraining the offering for sale, sale, or issuance of any municipal bonds" for public improvements or facilities. (Code Civ. Proc., § 526a, subd. (b).) The parties have disagreed as to how that prohibition applies here, given the nature of plaintiff's request for relief. The prayer for relief in plaintiff's complaint indicated that it was seeking, among other things, a judgment declaring the bond transaction invalid. At oral argument, plaintiff suggested for the first time that it was only seeking disgorgement of payments received by the allegedly-conflicted officers for their role in administering the bond issuance. The question of what particular form of relief plaintiff is seeking, and whether such relief is available under Code of Civil Procedure section 526a, should be answered first by the Court of Appeal. The parties agreed at oral argument that a remand would be the best course of action were we to find section 1092 does not provide plaintiff a private right of action.

## III.  DISPOSITION

The Court of Appeal's judgment is reversed.   The matter is remanded for the Court of Appeal to decide whether this plaintiff may proceed under Code of Civil Procedure section 526a or any other statutory provision.

**CORRIGAN, J.**

**We Concur:**

**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

SAN DIEGANS FOR OPEN GOVERNMENT v. PUBLIC
FACILITIES FINANCING AUTHORITY OF THE CITY OF
SAN DIEGO

S245996

Concurring and Dissenting Opinion
by Chief Justice Cantil-Sakauye

The purpose of the conflict-of-interest statutes, including Government Code sections 1090 and 1092,[1] is to protect the public. This purpose takes on special importance in the context of municipal bonds because of the prevalent use and economic importance of these bonds in the state of California.[2] California relies on these bonds to make capital improvements and to build and maintain public works, each of which is "a quintessentially public function." (*Department of Revenue of Ky. v. Davis* (2008) 553 U.S. 328, 342; see Cal. Debt, *supra*, table 3.) Consistent with the fact that these bonds are "the way to shoulder the cardinal civic responsibilities [of] protecting the health, safety, and welfare of citizens," it is the citizenry, or taxpayers, who

---

[1]     All further statutory references are to the Government Code unless otherwise indicated.

[2]     See California Debt and Investment Advisory Committee, 2018 Summary of California Public Debt Issuance (hereafter California Debt), tables 1, 2 <https://www.treasurer.ca.gov/cdiac/reports/annual/2018/summary.pdf> [as of Dec. 23, 2019] [reporting that in 2018 California and its political subdivisions issued approximately $62 billion in public debt, of which $50 billion was in the form of bonds]. All Internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.

ultimately pay for these bonds. (*Department of Revenue of Ky. v. Davis*, at p. 342, fns. omitted.)

One would think, then, that municipal bond issuances would be subject to the most exacting scrutiny — the kind of scrutiny needed to detect and remedy conflicts of interest that could both undermine public confidence in this crucial financing vehicle and saddle taxpayers with large enduring financial obligations. Yet, today's majority opinion holds otherwise. The majority interprets section 1092's language providing that "any party" may bring a judicial action to avoid a contract involving a prohibited conflict of interest as conferring standing only upon the parties *to the very contract to be avoided*. I disagree. I do not believe the Legislature created a scheme that counts on the foxes to guard the henhouse, and leaves taxpayers helpless to halt even the most egregiously conflicted government bond issuances. The likely result under the majority's rule is that *no one* will bring a challenge to avoid a government contract afflicted with a conflict of interest. Because I do not believe section 1092 should to be read so narrowly as to deliver this unfortunate outcome and nothing in its language compels such an interpretation, I respectfully dissent.

## I. Standing Under Section 1092

The question before us is one of statutory interpretation. Section 1090 states, "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." (§ 1090, subd. (a).) Section 1092, in turn, specifies, "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein." (§ 1092, subd. (a).)

In parsing the term "any party" in section 1092, we must decide whether the term refers to only parties to the challenged contract or whether it applies more broadly to encompass a taxpayer group like plaintiff San Diegans for Open Government (SDOG). If the former, then only contractual parties to a "contract made in violation of . . . Section 1090" have standing under section 1092 to challenge the contract. (§ 1092, subd. (a).)

As with any statutory construction case, we begin "by considering the statute's language and structure, bearing in mind that our fundamental task in statutory interpretation is to ascertain and effectuate the law's intended purpose." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246 (*Weatherford*).) In the context of standing, we have recognized that although "th[e] analysis [to determine standing] is grounded in the statutory text, the text read in isolation can be insufficient to adequately capture . . . other . . . considerations that have traditionally informed the outer limits of standing." (*Id.* at pp. 1248-1249.) We therefore maintain a "sensitivity to the larger context . . . to better effectuate the Legislature's purpose in providing certain statutory remedies." (*Id.* at p. 1249.)

The majority holds that the term "any party" in section 1092 means "any party *to the contract*." (Maj. opn*., ante*, at p. 7.) I disagree. I believe the term "any party" is ambiguous and capacious enough to reach plaintiff taxpayer group. Indeed, when section 1092 is read in light of the statutory structure and the imperative to "effectuate the . . . intended purpose" of the conflicts-of-interest statutes, the term should be understood to confer standing on interested taxpayers. (*Weatherford, supra*, 2 Cal.5th at p. 1246.)

## A.  The Text of Section 1092

I begin with the text of section 1092, which, as noted, states, "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein."  (§ 1092, subd. (a).)  The majority asserts that because section 1092 mentions a "contract made in violation of . . . Section 1090," the term "any party" "refers back to the contract" and should be read to mean contractual parties.  (Maj. opn*., ante,* at p. 7.)  But simply because this is one plausible interpretation of section 1092 does not mean it is the only such interpretation.

The term "any party" is easily understood to mean a "person" or "litigant," a designation encompassing nonparties to the challenged contract.  (See Merriam-Webster Online Dict. <https://www.merriam-webster.com/dictionary/party>  [as of Dec. 23, 2019] [defining "party" to include "a particular individual:  person"]; Black's Law Dict. (11th ed. 2019) p. 1350, col. 1 [defining "party" both as "[s]omeone who takes part in a transaction" and "[o]ne by or against whom a lawsuit is brought"]; accord Black's Law Dict., at p. 1695, col. 2 [defining standing as "[a] *party*'s right to make a legal claim or seek judicial enforcement of a duty or right" (italics added)].)

A number of courts, including the Court of Appeal in this case, have reached conclusions that are consistent with this reading.  (See *San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2017) 16 Cal.App.5th  1273,  1280-1283,  1284-1285  (*San Diegans*) [discussing these cases]; *Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 297, fn. 20 ["The term 'any party' is not restricted to parties to the contract"].)  The only Court of

Appeal to have adopted a more constrained construction is *San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679. The majority opinion approves of *San Bernardino*, contending that its interpretation of section 1092 is "[t]he most natural." (Maj. opn*., ante,* at p. 7.) Yet every Court of Appeal to have considered *San Bernardino* has disagreed with it. (See *Holloway v. Showcase Realty Agents, Inc.* (2018) 22 Cal.App.5th 758, 767-770 [noting that "[s]ince the time of the trial court's decision in the present case, a number of cases have criticized the rationale in *San Bernardino*" and joining the chorus of criticism]; *San Diegans*, *supra,* 16 Cal.App.5th at p. 1284 ["we do not agree with the limited interpretation of section 1092 adopted by the court in *San Bernardino*"]; *McGee v. Balfour Beatty Construction, LLC* (2016) 247 Cal.App.4th 235, 248 (*McGee*).) This seems to leave room for doubt concerning whether the majority's restrictive reading of section 1092 is, in fact, the most reasonable.

Neither of the two remaining bases the majority musters to support its interpretation of section 1092 entirely persuades me either. The majority first says that because section 1092 allows a "contract made in violation . . . of Section 1090 [to] be avoided" and "[a] nonparty does not possess the power to [avoid] a contract," we should infer that only contractual parties have standing under section 1092. (Maj. opn*., ante,* at pp. 7-8.) But our own case law offers a counterexample to the idea that nonparties cannot avoid a contract.

In *Thomson v. Call* (1985) 38 Cal.3d 633 (*Thomson*), a taxpayer group that was not a party to a government contract successfully avoided the municipality's responsibilities under that contract on the basis that the agreement violated section

1090.[3] The facts of *Thomson* are as follows: a councilman (Call) sold the City of Albany, by way of a middleman, a parcel of land he and his wife owned. (38 Cal.3d at p. 637.) The Calls received $258,000 from the transaction. (*Id.* at p. 643.) When the transaction was found to violate section 1090, the trial court's solution was to allow the City of Albany "to retain the land and, at the same time, recover the $258,000 plus interest from the Calls." (*Thomson*, at p. 646.) We recognized the "harsh[ness]" of this remedy but ultimately approved of it, reasoning that "the goals and policy concerns underlying section 1090" warranted such solution. (*Id.* at p. 647.) *Thomson* thus shows that a nonparty can seek to avoid the terms of a contract.[4] In light of such precedent, I do not see why we would be compelled to interpret section 1092's reference to "avoid[ance]" to mean that only a party to the contract may seek such a remedy. (§ 1092, subd. (a).)

The majority next looks to the "provisions of the Civil Code" to buttress its conclusion that the term "any party" in

---

[3] Not incidentally, this is exactly what SDOG has said it is seeking to do in this case: unwind a bond purchase agreement alleged to have been made in contravention of section 1090 so the City of San Diego would be reimbursed for the costs it paid under the agreement.

[4] The majority asserts that *Thomson* "provides no answer" to the ultimate question before us, whether a nonparty taxpayer may invoke section 1092 to challenge a public contract. (Maj. opn., *ante*, at p. 14, fn. 13.) In other words, *Thomson* is not controlling in the present case. I do not contend that it is. Rather, I reference *Thomson* to show that it is not just parties to a contract who may sue to "avoid[] [the] legal obligations thereunder," and thus "[t]he use of the word avoid in section 1092" does not bear the weight the majority's construction puts on it. (Maj. opn., *ante*, at p. 7.)

section 1092 means any contracting party.  (Maj. opn., *ante,* at
p. 8.)  I agree that we should look to the " 'structure and . . .
surrounding provisions' " of section 1092 to ascertain its
meaning.  (*Weatherford, supra,* 2 Cal.5th at pp. 1246-1247.)  But
it is the provisions neighboring section 1092 that are most
germane, not those from outside the Government Code.

In the article where section 1092 is found, the word "party"
appears 35 times.  In all of these instances, when the Legislature
intends the word "party" to mean "contractual party," it modifies
the word "party" with a qualifier — "contracting," "to the
contract," "to a contract" — that makes its intent unmistakably
clear.  (See §§ 1091, subds. (b)(2), (3), (5), (6), (8), (14), (d)
[referring to "contracting party"], 1091.5, subd. (a)(4), (10)
[same], 1091, subd. (b)(10) ["party to the contract"]; § 1091.5,
subds. (a)(11), (b) [same], 1091.5, subd. (a)(14) ["party to a
contract"].)[5]  In short, it appears that when the Legislature
intends to refer to contracting parties, it does not simply say
"party."  Only in section 1092 does the word "party" appear
without any qualifier.  It is fair to infer from the absence of any
modifying language in this context that the Legislature
intended for the word "party" within section 1092 to encompass
more than a "contracting party."[6]

---

[5]    In two instances, statutes within this article refer to
"party to litigation" and "party to any proceedings."  (§§ 1091,
subd. (b)(15), 1091.4, subd. (b).)

[6]    The majority states that to add a qualifier "to the phrase
'any party' in section 1092 arguably would have been
redundant."  (Maj. opn., *ante,* at p. 11.)  I cannot entirely

In sum, read in isolation, the term "any party" in section 1092 is at least ambiguous. In my view, the term is as susceptible to applying "broadly to embrace other interested persons" who are not parties to a contract as it is to a more restrictive reading. (Maj. opn*., ante,* at p. 6.) Any ambiguity is removed however when I consider the purpose, policy, and aim of section 1092.

### B. The Purpose of Section 1092

Because section 1092 provides a mechanism to enforce the rule against conflicts of interest set forth in section 1090, a few words regarding the purpose of section 1090 are appropriate. The goals behind section 1090 are to "eliminat[e]" financial temptation faced by public officials, "avoid[] the appearance of impropriety," and "assur[e] the [municipality] of the officer's undivided and uncompromised allegiance." (*Thomson, supra,* 38 Cal.3d at p. 648.) In light of these goals, we have said that

---

disagree with this carefully couched assertion, because in saying that a qualifying addition "arguably would have been redundant," the majority acknowledges that it arguably would *not* have been redundant. (*Ibid.*) Indeed, such an addition would not have been clearly surplusage. Even the provisions cited by the majority show that the Legislature may modify the word "party" although the statutory language already references a contract. (See *id.* at p. 8 & fn. 7.) For instance, Civil Code section 1689 provides that "[a] contract may be rescinded if all the parties *thereto* consent." (Civ. Code, § 1689, subd. (a), italics added; see also *id.*, § 1559 ["[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it"].) As such, had the Legislature wanted to, it easily could have drafted section 1092 to read, "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party thereto," without being redundant.

section 1090 deserves "strict enforcement." (*Thomson*, at p. 650.)

The "strict enforcement" of section 1090 necessarily depends in part on who may sue to enforce its substance. (*Thomson*, *supra*, 38 Cal.3d at p. 650.) Simply put, however strict the prohibitions of section 1090 are, if no one could — or would — bring suit to vindicate its provisions, then section 1090 is a paper tiger. In the context of a different conflict-of-interest statute (section 526a of the Code of Civil Procedure), we have recognized the need to empower " 'a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' " (*Weatherford, supra*, 2 Cal.5th at p. 1251.) That same need arises in the context of section 1090, and this is where section 1092 plays a crucial role.

Section 1092 allows "any party *except the officer interested therein*" to bring suit. (§ 1092, subd. (a), italics added.) The majority's interpretation of section 1092 means that in circumstances in which *every* party to the contract is for one reason or another an interested government official *no one* will be able to sue for avoidance under the statute. (See, e.g., *People v. Superior Court* (*Sahlolbei*) (2017) 3 Cal.5th 230, 235, 243 [discussing a case in which the counterparty to a government contract was an interested person because, while working for a school district, she "advised the district to retain her consulting company . . . , which the district did"]; *California Taxpayers Action Network v. Taber Construction, Inc.* (2017) 12 Cal.App.5th 115, 145; *McGee, supra*, 247 Cal.App.4th at p. 249.)

Even when it is not the case that all parties to a contract are "[m]embers of the Legislature, state, county, district,

judicial district, . . . [or] city officers or employees," such parties may still have little incentive to unwind a transaction that they have ratified.  (§ 1090, subd. (a).)  Government officials would appear to have little financial or political motivation to sue on behalf of the public when, by suing, the officials themselves could be implicated for alleged collusion, delay, malfeasance, or negligence.  A private counterparty to the contract also may have little reason to bring suit, given that it won the contract or otherwise engaged with the public entity and so likely would not want to disrupt the status quo, invite bad press, or rouse suspicion that it engaged in bribery or collusion with a public official.

In other words, I believe the court below was correct when it said, "The strict and important policy embodied in section 1090 . . . will not be vindicated if public officials believe section 1090's substantive provisions may only be enforced by the very public officials or public entities who have violated the statute's provisions."  (*San Diegans*, *supra,* 16 Cal.App.5th at pp. 1283-1284.)  Because "a public official's duty to avoid *even temptation* cannot be advanced by adopting a rule which limits civil enforcement to that public official or public entities controlled by the official," I would not adopt such a rule.  (*Id.* at p. 1284.)

The majority recognizes the public policies that support the decision below but maintains that "the Court of Appeal's interpretation of section 1092 [is not] necessary to vindicate the policies embodied in section 1090."  (Maj. opn.*, ante,* at p. 16.)  According to the majority, this is because there are other mechanisms "for enforcing the substantive prohibitions in section 1090."  (*Ibid.*)  These are:  criminal prosecutions under section 1097, civil or administrative actions brought by the Fair Political Practices Commission (FPPC), and civil actions "by

taxpayers under Code of Civil Procedure section 526a where appropriate." (Maj. opn., *ante*, at p. 17.) In my opinion, none of these provisions quite fills the gap left by the majority's construction of section 1092.

Neither the threat of criminal prosecution nor action by the FPPC protects the public in the way that section 1092 does — or at least, should. An official may be criminally prosecuted only if he or she "willfully and knowingly" violates section 1090. (*People v. Chacon* (2007) 40 Cal.4th 558, 570; see § 1097, subd. (a).) This heightened mens rea requirement leaves a swath of instances in which the official may have had an improper interest, the public was deprived of his or her "absolute loyalty and undivided allegiance," and yet there is no recourse to be had from the Attorney General or district attorney. (*Stigall v. Taft* (1962) 58 Cal.2d 565, 569.)

The FPPC, meanwhile, cannot act except upon "written authorization from the district attorney of the county in which the alleged violation occurred." (§ 1097.1, subd. (b).) Thus, in a case in which the district attorney, for whatever reason, withholds authorization, the FPPC cannot even begin "an investigation that might lead to administrative or civil action" against an interested official. (*Ibid.*) Moreover, neither the FPPC nor criminal prosecutors can offer the public the remedy available under section 1092: avoidance of the contract. Although the penalties afforded in FPPC or criminal actions are not insubstantial (see §§ 1097, subd. (a), 1097.3, subd. (a)), their target are the officials themselves, not the resulting contracts foisted on the public. And the public may be both less interested in sending someone to prison than unwinding a raw deal and less well served by a fine than by halting a bond transaction infected with self-interest.

This leaves us with Code of Civil Procedure section 526a. An action brought under section 526a that disputes the validity of a bond is subject to a short 60-day statute of limitations. (See *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1166-1170.) This is in contrast to the four-year statute of limitations afforded to actions brought under Government Code section 1092. (§ 1092, subd. (b).)

More importantly, in examining the limits of Code of Civil Procedure section 526a, we come full circle with the importance of bonds and the public interest. The majority refers to this limitation, acknowledging that under subdivision (b) of section 526a "no injunction shall be granted restraining the offering for sale, sale, or issuance of any municipal bonds for public improvements or public utilities." (Code Civ. Proc., § 526a, subd. (b); see maj. opn., *ante*, at p. 18.)[7] In other words, when municipal bonds are at stake — precisely the instance in which the taxpayers bear the costs of paying for the public debt — taxpayers may not seek to "restrain[] the offering for sale, sale, or issuance" of any of those bonds under section 526a. (Code Civ. Proc., § 526a, subd. (b).) Yet the availability of such a remedy is crucial. Once bonds have issued, attempts to claw them back, rewrite their terms, or otherwise renegotiate the issuance may prove impossible. In the absence of preemptive

---

[7] Relying on this provision, the majority argues that "[c]onstruing section 1092 to permit nonparties to sue to avoid contracts for section 1090 violations would effectively provide an end-run around the Legislature's bar on claims seeking to enjoin municipal bond issuances." (Maj. opn., *ante*, at p. 12, fn. 11.) Given that *parties* to the contract presumably could bring such claims, however, there is no reason to think that actions seeking injunctions on municipal bond issuances are, by necessity, the "end-run[s]" the majority makes them out to be. (*Ibid.*)

remedies like an injunction, self-interested governmental dealings may well inflict costly and irreparable harm on the public.

Put differently, today majority's opinion holds that in cases in which government officials make contracts that amount to writing checks on the public's checkbooks, the public cannot stop them. This did not need to be the outcome. Section 1092 is readily capable of being read as conferring standing on nonparty taxpayer groups to bring a challenge in such circumstances. I would read the section thusly.

## II. CONCLUSION

Like the Court of Appeal, I believe "plaintiff taxpayers have standing under Government Code section 1092 to challenge the [City of San Diego's] ordinance on the grounds participants in the proposed transaction violated the conflict of interest provisions of section 1090." (*San Diegans*, *supra*, 16 Cal.App.5th at p. 1276, fn. omitted.) I therefore would affirm the judgment below.

The majority today reverses and remands to the Court of Appeal "to decide whether this plaintiff may proceed under Code of Civil Procedure section 526a." (Maj. opn., *ante*, at p. 19.) Although I dissent from the decision to reverse, I do not oppose a remand given the majority's disposition.

**CANTIL-SAKAUYE, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** San Diegans for Open Government v. Public Facilities Financing Authority of the City of San Diego

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 16 Cal.App.5th 1273
**Rehearing Granted**


_____

**Opinion No.** S245996
**Date Filed:** December 26, 2019
_____

**Court:** Superior
**County:** San Diego
**Judge:** Joan Marie Lewis


_____

**Counsel:**

Briggs Law Corporation, Cory J. Briggs, Anthony N. Kim; Higgs Fletcher & Mack, John Morris and Rachel E. Moffitt for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, David J. Karlin and George F. Schaefer, Assistant City Attorneys, and Meghan Ashley Wharton, Deputy City Attorney, for Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Meghan Ashley Wharton
Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, CA 92101
(619) 533-5800

Rachel E. Moffitt
Higgs Fletcher & Mack LLP
401 West A Street, Suite 2600
San Diego, CA 92101
(619) 236-1551